# Exhibit D

# manatt

Samantha J. Katze
Manatt, Phelps & Phillips, LLP
Direct Dial: (212) 790-4579
E-mail: SKatze@manatt.com

January 21, 2020

**VIA EMAIL**

Daniel Tepper, Esq.
Wolf Haldenstein Adler Freeman & Herz LLP
270 Madison Avenue
New York, New York 10016

> Re: *In re Fisher-Price Rock 'n Play Sleeper Marketing, Sales Practices, and Products Liability Litigation*, Case No. 1:19-md-2903

Dear Dan:

On behalf of Defendants Fisher-Price, Inc. and Mattel, Inc. (collectively, "Defendants"), we write in response to your two letters dated December 31, 2019, which responded to our December 6, 2019 and December 23, 2019 letters concerning Plaintiffs' responses and objections to Defendants' first set of document requests and Plaintiffs' December 6, 2019 production, respectively.[1] We have considered the arguments raised in your letters and address them below.

As you know, in our December 6, 2019 letter, we took issue with (1) Plaintiffs' refusal to produce any documents in response to Request Nos. 8, 11, 15, 18 and 19; (2) the limits Plaintiffs unilaterally seek to impose on the scope of documents to be produced in response to Request Nos. 1, 2, 3, 4 and 12; and (3) Plaintiffs' unclear response to Request No. 16. (*See* Dec. 6 Letter.) While your representations in the December 31 Request Letter that "Plaintiffs [have] agreed to produce all documents responsive to [Request Nos. 1, 2 and 12] not withstanding that they are cumulative" and "will produce documents, if any, in response to Request No. 16 seeking social media posts concerning the product" (Dec. 31 Request Letter at 2) resolve our present concerns regarding Plaintiffs' responses and objections to those particular requests, your letter fails to adequately address the issues raised with respect to Plaintiffs' responses and objections to Request Nos. 3, 4, 8, 11, 15, 18 and 19. (*See id.* at 1-2.)

Regarding **Request No. 8**, which seeks "[c]opies of all photographs or videos of Your child (and/or your children) in the Product[,]" as we explained in our December 6 letter, photographs and videos of Plaintiffs' children in the Rock 'n Play Sleeper ("RNPS") are relevant

---

[1] Your December 31, 2019 letter responding to our December 6, 2019 letter will be referred to herein as the "December 31 Request Letter." Your December 31, 2019 letter responding to our December 23, 2019 letter will be referred to herein as the "December 31 Production Letter."

7 Times Square, New York, New York 10036  Telephone: 212.790.4500  Fax: 212.790.4545

Albany | Boston | Chicago | Los Angeles | New York | Orange County | Palo Alto | Sacramento | San Francisco | Washington, D.C.

# manatt

Daniel Tepper, Esq.
January 21, 2020
Page 2

to both the merits and to class certification. How Plaintiffs used the RNPS, whether for play, daytime sleep, nighttime sleep, or otherwise, and whether Plaintiffs used the RNPS as directed impact whether class certification is proper. (*See* Dec. 6 Letter at 1-2.) Specifically, they are relevant to the issues of adequacy, typicality, and predominance, among others.

As we further explained, even assuming that the privacy concerns Plaintiffs raise with respect to producing photographs or videos were legitimate, which they are not, they can be addressed by designating such documents "Confidential" pursuant to the governing Protective Order. (*Id.*) Faced with that reasoning, your only response is to point to Mr. de Recat's statements during the December 9 conference that "when we're talking about the purchase and use of the Rock 'n Play…That will be achieved, in large part, by the depositions of the named plaintiffs." (Dec. 31 Request Letter at 1.) But even if, as Mr. de Recat stated, evidence of use "will be achieved, in large part, by the depositions of the named plaintiffs[,]" that does not mean that the depositions of the named Plaintiffs will be the *only* evidence of use.[2] Nor does it absolve Plaintiffs of their obligation to produce the requested photographs and videos, which are unquestionably relevant to whether a class should be certified in this multidistrict litigation ("MDL").[3] We highly doubt Plaintiffs would accept Defendants' refusal to produce relevant documents on the grounds that Plaintiffs could simply ask questions of Defendants' witnesses at deposition. And we do not believe the Court would accept this excuse from Plaintiffs either. Consequently, Plaintiffs have not provided any legitimate basis for withholding documents responsive to this Request.

With respect to **Request No. 11**, which seeks "[d]ocuments sufficient to show any and all equipment, furniture, devices (including but not limited to cribs, bassinets, cradles or Inclined Sleepers) You or Your agent used for Your child's and/or your children's sleep from the child's or children's birth to one year of age[,]" as set forth in our December 6 letter, documents responsive to this request are relevant to this case, including class certification, because they go directly to the issue of Plaintiffs' expectations relating to the RNPS and their children's sleep habits. (*See* Dec. 6 Letter at 2.) This, again, is relevant to, among other things, the issues of adequacy, typicality, and predominance.

Moreover, Plaintiffs' refusal to produce photographs and videos in response to this request suffers from the same flaws discussed above with respect to Request No. 8, and there is

---

[2] Indeed, as Mr. de Recat clarified, "[t]here may be other things as well. We haven't finished that definition, you know, we're still working through that. But, as I agreed with you last time, that's going to be the centerpiece." (Dec. 9, 2019 Tr. at 10:5-8.)

[3] These arguments apply equally to Request Nos. 3 and 4 to the extent Plaintiffs' agreement to produce documents in response to these requests remain "subject to Plaintiffs' continuing objections to Defendants' Requests No. 8 and 11." (Dec. 31 Request Letter at 2.)

# manatt

Daniel Tepper, Esq.
January 21, 2020
Page 3

no truth to Plaintiffs' assertion that the information sought by this request "may be obtained more efficiently through testimony or interrogatories." (*Id.*) In response, you point to Plaintiffs' meritless objections to Request No. 8 and assert that "[w]hether Plaintiffs' children used any sleeping accommodations other than the Rock 'n Play is not relevant to whether a class or classes can be certified in this case." (Dec. 31 Request Letter at 2.) Yet, the particular devices in which Plaintiffs' children slept are clearly relevant to what the Court has described as:

> the limited class certification issue of were these client consumer experiences so different that they can't be linked together in the same class because everybody had a different subjective expectation regarding the safety and use of the product and everybody had a different family routine for when the infant was placed in the product, questions like that.

(September 16, 2019 Tr. at 30:20-31:2.)

Furthermore, as explained in our December 6 letter, whether Plaintiffs themselves have copies of and/or viewed the documents responsive to **Request No. 15**, which seeks "[a]ny and all documents referenced in Your complaint in this action[,]" goes directly to, among other things, Plaintiffs' knowledge and reliance. (Dec. 6 Letter at 2.) As does the question of when they viewed the documents referenced in the complaint, if at all. Accordingly, your assertion that "[a]ll the documents cited in the Consolidated Amended Complaint are equally available to Defendants through the hyperlinks in the citations" is beside the point. (*See* Dec. 31 Request Letter at 2.)

In addition, you have asked us to provide authority to support our position that "[d]ocuments sufficient to identify all cases in which You are serving and/or have served as a class representative or in which You are seeking and/or have sought to serve as a class representative" (*see* **Request No. 18**) and "[d]ocuments sufficient to identify all cases, other than this case, in which You have been represented by Your attorneys in this action" (*see* **Request No. 19**) bear on whether Plaintiffs' are adequate class representatives. By way of example, in *In re J.P. Morgan Chase & Co. Shareholder Derivative Litigation*, Master File No. 08 Civ. 974(NRB), 2008 WL 4298588 (S.D.N.Y. Sep. 19, 2008), the court dismissed a shareholder derivative action finding that plaintiff could not be trusted to represent the shareholders "fairly and adequately" where plaintiff was a "professional plaintiff." *Id.* at *7-10;[4] *see also Reed v. Continental Guest Services Corp.*, No. 10 Civ. 5642(DLC), 2011 WL 1311886, at *2 (S.D.N.Y.

---

[4] The "fair and adequate representation" requirement of Rule 23.1 is "analogous to the requirement that a representative party in a class action must 'fairly and adequately protect the interests of the class.'" *In re J.P. Morgan Chase & Co. Shareholder Derivative Litigation*, 2008 WL 4298588, at *7.

manatt

Daniel Tepper, Esq.
January 21, 2020
Page 4


~~Apr. 4, 2011) (citing *In re JPMorgan's* discussion of the "concern over phenomenon of the~~ 'professional' class plaintiff" and noting that "[i]n the event the class certification motion were to be litigated, there [was] a serious question whether Reed would be found to be an adequate representative of the class"). In addition, in *In re IMAX Securities Litigation*, 272 F.R.D. 138 (S.D.N.Y. 2010), the court denied class certification based on the proposed class representative's relationship with class counsel. *Id.* 155-57 ("We do not suggest that Snow Capital's representation would in fact be inadequate—but the possibility of inadequacy and the appearance of impropriety are sufficient for us to deny certification of a class with Snow Capital as its representative."). In analyzing whether the proposed class representative had met the adequacy requirement of Fed. R. Civ. P. 23(a)(4), the court noted that "[a] key element in the determination of whether a plaintiff's interests are antagonistic to those of other members of the class is the relationship between the class representative and class counsel." *Id.* at 155. The court further observed that "[t]he rationale behind cases in which class certification has been denied because of the relationship between the class representative and class counsel is clear: courts are concerned that 'when a class representative is closely associated with class counsel, he or she may permit a settlement less favorable to the interests of absent class members.'" *Id.* at 155-56. For these reasons, among others, documents responsive to Request Nos. 18 and 19 are relevant to whether Plaintiffs are adequate class representatives.

As for your December 31 Production Letter, thank you for clarifying that "Plaintiffs' initial production was not intended to be complete." (Dec. 31 Production Letter at 1.) We are in the process of reviewing the additional documents Plaintiffs produced on January 15, 2020, and will advise in due course as to whether that production has resolved the concerns set forth in our December 23, 2019 letter with respect to the substance of Plaintiffs' December 6, 2019 production. However, at present, we still have issues concerning the metadata as expressed in our December 23, 2019 letter. Specifically, the database load file accompanying the documents is not in the proper format as it does not contain the agreed-upon fields set forth in Appendix A to the parties' Agreed Electronic Discovery Plan (the "ESI Plan"). Even if the fields are blank, they should be included as part of the load file, which Plaintiffs have not done. Accordingly, please confirm that there is no available metadata to produce pursuant to the ESI Plan with respect to the documents Plaintiffs produced on December 6, 2019. Moreover, going forward, we would appreciate that all data load files be uniform and that they provide all fields even when blank.

**manatt**

Daniel Tepper, Esq.
January 21, 2020
Page 5

      We remain available to meet and confer regarding the issues discussed above. Defendants reserve all rights.

Very truly yours,

*Samantha J. Katze*

Samantha J. Katze

cc:    Demet Basar, Esq. (via email)
        Terrence M. Connors, Esq. (via email)
        Kate McGuire, Esq. (via email)
        Katherine Howard, Esq. (via email)