# Exhibit E

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

FOUNDED 1888

270 MADISON AVENUE

NEW YORK, NY 10016

212-545-4600

750 B STREET - SUITE 2770
SAN DIEGO, CA 92101

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC
70 WEST MADISON STREET, SUITE 1400
CHICAGO, IL 60602

DANIEL TEPPER
DIRECT DIAL: (212) 545-4683
FACSIMILE: (212) 686-0114
tepper@whafh.com

January 24, 2020

**By E-Mail Only**

Samantha Katze, Esq. (Skatze@manatt.com)
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, New York 10036

Re:  **In re Fisher-Price Rock 'n Play Sleeper Marketing, Sales Practices, and Products Liability Litigation**

  **Case No. 1:19-md-2903 (WDNY)**

Dear Counsel:

We write in response to your letter of January 21st concerning Plaintiffs' responses and objections to Defendants' first set of document requests. We stand by our objections for the reasons below.

**I.  Plaintiffs' Baby Pictures (Request 8)**

Defendants offer no support for their contention that Plaintiffs' baby pictures "are relevant to the issues of adequacy, typicality and predominance, among others" and that the pictures "are unquestionably relevant to whether a class should be certified." We fail to see how Plaintiffs' baby pictures are relevant to any of these issues and invite you provide examples and authority in support of your arguments. Nor do you provide any authority in support of your contention that Plaintiffs' use of the Rock 'n Play Sleeper is relevant to any of these issues.

Indeed, the Rock 'n Play Sleeper was marketed as suitable for play, daytime sleep, or nighttime sleep. *See, e.g.,* FSHR0012783 (defendants' website touting the product for "sleep all naptime or nighttime long"); FSHR0012787 (defendants' website touting the product: "It's an inclined sleeper and playtime seat in one!"). *See also* Consolidated Amended Complaint at 74, Fig. 7 (reproducing defendants' packaging touting the Rock 'n Play Sleeper as a "Nighttime



Wolf Haldenstein Adler Freeman & Herz llp

January 24, 2020
Page 2

sleeper and playtime seat!"); *Id.* at ¶ 193 (providing link to defendants' marketing on Amazon.com touting the Rock 'n Play Sleeper as helping "little ones sleep all naptime or nighttime long," and that it is "a Sleeper & playtime seat in one.").

Even assuming for the sake of argument that Plaintiffs' use of the product is relevant, Plaintiffs' baby pictures are not probative of how the product was typically used; at most they show how the product was used at the moment the picture was taken, which is not relevant to class certification. Seeking Plaintiffs' baby pictures is deeply intrusive for no legitimate purpose. Plaintiffs stand on their objections in the absence of any authority from Defendants to the contrary.

### II.     Plaintiffs' Children's Other Sleeping Accommodations (Request 11)

Defendants contend that documents sufficient to show all of the sleeping accommodations used by Plaintiffs' children for the first year of their lives (e.g., cribs, cradles, bassinets, beds, etc.) is "relevant to, among other things, the issues of adequacy, typicality and predominance" but again fail to explain how or offer any authority in support of their position. Whether or not Plaintiffs used any other sleeping accommodations for their children has nothing to with "Plaintiffs' expectations" relating to the Rock 'n Play Sleeper. Nor do we understand how the sleep habits of Plaintiffs' children are relevant to class certification. In the absence of any authority from Defendants to the contrary, Plaintiffs stand on their objections.

### III.    Documents Cited in the Complaint (Request 15)

Defendants contend that the documents cited in the complaint are relevant to "Plaintiffs' knowledge and reliance." This leap of logic makes no sense because Plaintiffs had already acquired their Rock 'n Play Sleepers well before the complaint was drafted. We also fail to understand the relevance of "when [Plaintiffs] viewed the documents referenced in the complaint, if at all." We are unaware of any authority that a prospective class representative's adequacy depends on whether and when she reviewed the citations in a complaint. Plaintiffs stand on their objections in the absence of relevant authority from Defendants.

### IV.    Prior Representations (Requests 18 and 19)

We have reviewed the authorities cited in your letter, none of which involves a consumer product, is therefore inapposite, and have nothing to do with the situation here. A common definition of a "professional plaintiff" is someone who enters into a transaction for the sole purpose of later filing a lawsuit. *See, e.g., Katz v. Liberty Power Corp., LLC*, No. 18-10506, 2019 U.S. Dist. LEXIS 162793, at *31-32 (D. Mass., Sept. 24, 2019). While this may sometimes be an issue in securities and financial cases like those cited in your letter, the argument that Plaintiffs bought their dangerous and potentially deadly Rock 'n Play Sleepers for the purpose of filing a lawsuit is so ludicrous that it needs no further comment. There is no relationship between a plaintiff having previously served as a class representative in a class action and her adequacy to serve as a class representative in a totally unrelated consumer class action like this.

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

January 24, 2020
Page 3

## V.   Metadata

This will confirm that we have no additional metadata for Plaintiffs' December 6, 2019 production beyond what has already been produced. We will take the rest of your comments concerning metadata under advisement. Please alert us of any production issues in the future so that we may take prompt corrective action if warranted.

Very truly yours,

*Daniel Tepper*

Daniel Tepper

cc:   Craig de Recat, Esq. (Cderecat@manatt.com)
      Adrianne E. Marshack, Esq. (Amarshack@manatt.com)
      Matt Kanny, Esq. (Mkanny@manatt.com)
      Plaintiffs' Executive Committee
      Plaintiffs' Liaison Counsel

807848