# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

IN RE: FISHER-PRICE ROCK 'N PLAY SLEEPER MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION

MDL No. 1:19-md-2903

Hon. Geoffrey W. Crawford

This Document Relates To: ALL CASES

# SETTLEMENT AGREEMENT

## TABLE OF CONTENTS

Section                                                                    Page

I.     PROCEDURAL HISTORY ...................................................................4

II.    DEFINITIONS ...................................................................................11

III.   SETTLEMENT RELIEF .................................................................20

IV.    NOTICE TO THE CLASS ..............................................................37

V.     REQUESTS FOR EXCLUSION .....................................................41

VI.    OBJECTIONS TO SETTLEMENT ...............................................43

VII.   RELEASE AND WAIVER ..............................................................45

VIII.  QUALIFIED SETTLEMENT FUND .............................................49

IX.    ATTORNEYS' FEES AND EXPENSES AND CLASS
       REPRESENTATIVE SERVICE AWARDS ....................................51

X.     PRELIMINARY APPROVAL ORDER, FINAL APPROVAL
       ORDER, AND FINAL JUDGMENT, AND RELATED ORDERS ............................51

XI.    AGREEMENT TO COOPERATE TO EFFECTUATE THE SETTLEMENT .......55

XII.   MODIFICATION OR TERMINATION OF THIS
       SETTLEMENT AGREEMENT ......................................................55

XIII.  REPRESENTATIONS AND WARRANTIES .................................58

XIV.   GENERAL MATTERS AND RESERVATIONS............................60

### TABLE OF EXHIBITS

**Document**                                               **Exhibit Number**

List of RNPS ...................................................................................................1

Preliminary Approval Order .................................................................2

Notice Plan ........................................................................................3

Long Form Notice...............................................................................4

Direct Notice......................................................................................5

Claim Form .......................................................................................6

Settlement Administrator's Declaration ...............................................7

Final Judgment...................................................................................8

Final Approval Order .........................................................................9

*Pltfs' 3.14.2024 Draft -For Discussion Purposes Only*
*Confidential Settlement Discussions*
*Subject to FRE 408*

This Settlement Agreement  is made and entered into by Plaintiffs Elizabeth Alfaro, Emily Barton, Linda Black, Luke Cuddy, Rebecca Drover, Megan Fieker, Karen Flores, Nancy Hanson, Jena Huey, Samantha Jacoby, Megan Kaden, Kerry Mandley, Cassandra Mulvey, Joshua Nadel, Melanie Nilius Nowlin, Daniel Pasternacki, Jessie Poppe, Katharine Shaffer, Emily Simmonds Josie Willis, Renee Wray, individually and on behalf of the Settlement Class ("Plaintiffs")[1] and Defendants Fisher-Price, Inc. ("Fisher-Price") and Mattel, Inc. ("Mattel") (collectively, "Defendants").  Plaintiffs and Defendants are individually referred to herein as a "Party" and collectively referred to herein as the "Parties."

## RECITALS

A.      Plaintiffs, on behalf of themselves and the classes they seek to represent, brought class actions in various federal district courts and one state court against Defendants alleging claims in connection with the manufacturing, marketing, and sale of the Fisher-Price Rock 'n Play Sleeper (the "RNPS"). Each individual complaint asserted statutory and common law claims against Defendants and sought all available damages, including statutory damages, punitive damages, and injunctive relief on behalf of statewide and, in some cases, nationwide classes.

B.      On August 1, 2019, the Judicial Panel on Multi-District Litigation ("JPML") transferred the class actions to the United States District Court for the Western District of New York ("Court" or "WDNY") for centralized proceedings before the Hon. Geoffrey G. Crawford, Chief Judge of the District of Vermont, sitting in the WDNY as a visiting judge, under the caption

---

[1] All capitalized terms are defined in the Definitions section of this Settlement Agreement. *See* Section II, *infra*.

*In re: Fisher-Price Rock 'n Play Sleeper Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2903.

C.      On October 28, 2019, Plaintiffs filed their Consolidated Amended Complaint ("CAC"), which consolidated the claims of the various Plaintiffs into a single amended pleading, and asserted consumer protection, warranty and other claims against Defendants in connection with the manufacturing, marketing and sale of the RNPS, and sought all available damages, including statutory damages and punitive damages, and injunctive relief, on behalf of statewide, multi-class and nationwide classes. Plaintiffs also alleged the April 2019 Recall of the product was deficient.

D.      Defendants deny that they are liable to Plaintiffs or the Settlement Class for the claims, damages, financial harm, non-financial harm, causes of action, costs, expenses, and attorneys' fees asserted in the CAC and/or related in any way to the RNPS, deny all allegations by Plaintiffs, and further state that they would assert substantial legal and factual defenses against Plaintiffs' claims if they were litigated to conclusion. Nonetheless, Defendants have concluded, in light of the costs, risks and burden of litigation, that this Settlement Agreement is appropriate. Defendants agree that this Settlement Agreement is a fair, reasonable, and adequate resolution of all Released Claims against all Released Parties.  Defendants reached this conclusion after considering the factual and legal issues relating to the Action, the substantial benefits of this Settlement Agreement, the expense that would be necessary to defend the claims asserted by Plaintiffs and the Settlement Class Members through trial and any appeals that might be taken, the benefits of resolving protracted and complex litigation, and the desire of Defendants to conduct their business unhampered by the costs, distraction and risks of continued litigation over the Released Claims.

2

E.      Plaintiffs, through their counsel, have conducted substantial discovery, have investigated the facts and underlying events relating to the subject matter of the Action, have carefully analyzed the applicable legal principles, have retained an independent economist expert to analyze the potential damages available based on the claims asserted in this Action, have retained independent marketing and survey experts to analyze marketing claims asserted in the Complaint, and have concluded, based upon their investigation, and taking into account the risks, uncertainties, burdens, and costs of further prosecution of the Action, and further taking into account the substantial benefits to be received pursuant to this Settlement Agreement, that a resolution and compromise on the terms set forth herein is fair, reasonable, adequate, and in the best interests of Class Representatives and the other Settlement Class Members, and treats Settlement Class Members fairly and equitably in relation to one another.

F.      As a result of extensive arm's length negotiations, including numerous mediation sessions over several years among Class Counsel and Defendants' Counsel before Court-appointed mediator Christopher Ekman, including an in-person mediation in March 2023 with Mr. Ekman and the Hon. Margaret M. Morrow (Ret.) as an additional mediator, and, most recently, a July 2, 2024 Zoom mediation before the same mediators relating to certain terms of the Settlement Agreement, Class Representatives, Class Counsel, and Defendants have entered into the Agreement, which will resolve all claims against Defendants that were or could have been alleged in the Actions (except claims for personal injury, wrongful death, and property damage).

G.      Defendants, for the purpose of avoiding the burden, expense, risk, and uncertainty of continuing to litigate the Action, and for the purpose of putting to rest all controversies with Class Representatives, the other Settlement Class Members, the Action, and claims that were or

could have been alleged, except as otherwise set forth herein, and without any admission of liability or wrongdoing, agree to enter into this Settlement Agreement;

H.      Class Counsel represent and warrant that they are fully authorized to enter into this Settlement Agreement on behalf of Class Representatives, and that Class Counsel have consulted with and confirmed that all proposed Class Representatives fully support and have no objection to this Settlement Agreement.

I.      It is agreed that this Settlement Agreement shall not be deemed or construed to be an admission, concession, or evidence of any violation of any federal, state, or local statute, regulation, rule, or other law, or principle of common law or equity, or of any liability or wrongdoing whatsoever, by Defendants or any of the Released Parties, or of the truth or validity of any of the claims that Class Representatives have asserted.

**NOW, THEREFORE**, without any admission or concession by Class Representatives or Class Counsel of any lack of merit to their allegations and claims, and without any admission or concession by Defendants of any liability or wrongdoing or lack of merit in its defenses, in consideration of the mutual covenants and terms contained herein, and subject to both the preliminary and final approval of the Settlement by the Court, Class Counsel, Class Representatives, and Defendants agree as follows:

I.      **PROCEDURAL HISTORY**

A.      On October 1, 2009, Fisher-Price introduced the RNPS to the consumer market. On April 12, 2019, Fisher-Price and the Consumer Product Safety Commission (CPSC) jointly announced a voluntary Recall of the RNPS. Fisher-Price sold—either directly or through retailers—approximately 4.7 million RNPS during the almost ten years the product was on the market.

**B.**     Consumers who purchased an RNPS or received an RNPS as a gift filed a total of sixteen (16) separate class action lawsuits in six federal courts across the country, asserting class claims for residents of thirteen states.  Plaintiffs in those cases alleged, among other things, that Defendants' advertising and marketing of the RNPS was false and misleading because the product posed a safety risk. Some Plaintiffs also alleged the Recall was deficient.

**C.**     On August 1, 2019, the JPML transferred ten of the sixteen actions to the WDNY for centralized proceedings before the Honorable Geoffrey W. Crawford, under the caption *In re: Fisher-Price Rock 'n Play Sleeper Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2903. (ECF 1).

**D.**     By Conditional Transfer Order dated August 14, 2019, the JPML transferred *Hanson v. Fisher-Price, Inc.*, C.A. No. 19-00204 (S.D. Iowa) to the Western District of New York. (ECF 2).  By Conditional Transfer Order dated August 19, 2019, the JPML also transferred *Willis v. Fisher-Price, Inc.*, C.A. No. 19-00670 (M.D. Tenn.) to the Western District of New York.  (ECF 5).

**E.**     On September 20, 2019, the Court appointed lead counsel as well as a Plaintiffs' Committee and Liaison Counsel in its Initial Case Management Order. (ECF 12). Among other things, the Court also ruled that discovery would be bifurcated, with discovery relating to class certification issues occurring first, followed by discovery on liability issues if a class was certified.

**F.**     On October 28, 2019, Plaintiffs filed their CAC asserting claims on behalf of twenty-three individually named plaintiffs and similarly situated Settlement Class Members who purchased an RNPS or received an RNPS as a gift between October 1, 2009 and April 12, 2019 for: (1) violations of various state law consumer protection statutes; (2) breach of express warranty; (3) breach of implied warranty; (4) negligence; (5) unjust enrichment; and, on behalf of a

nationwide class, (6) a claim for violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. (ECF 19). In addition, Plaintiffs alleged that the Recall was deficient because some Recall participants stood to receive vouchers instead of cash payments and all Recall participants were required to dismantle the RNPS, package it and mail it to Fisher-Price, which Plaintiffs alleged disincentivized people to participate in the Recall. (ECF 19).

G.      On December 12, 2019, Defendants filed an answer to the CAC denying in material and substantive part Plaintiffs' allegations. (ECF 28).

H.      Following the filing of the CAC, the Parties engaged in extensive formal discovery directed at class certification issues. The Parties exchanged voluminous written discovery. Defendants produced, and Plaintiffs processed and reviewed, thousands of documents containing hundreds of thousands of pages related to the RNPS, including documents concerning the design and marketing of the RNPS, and the Recall. Plaintiffs conducted depositions of several of Defendants' employees with knowledge about the development, marketing, and testing of the RNPS, and Defendants' corporate representative, designated pursuant to Rule 30(b)(6). Plaintiff also reviewed Defendants' document productions to the CPSC and to the U.S. House of Representatives.

I.      Plaintiffs, in turn, responded to Defendants' written discovery requests and produced documents. Defendants took the depositions of all twenty-one of the named Plaintiffs, many of these depositions took a full day to complete.[2]

J.      Plaintiffs also conducted extensive third-party discovery. Plaintiffs subpoenaed and obtained records, including from (1) online and brick-and-mortar retailers related to RNPS sales;

_____

[2] Two named Plaintiffs, Candace Kimmel and Brianna Parsons, ultimately dismissed their claims and, thus, were not deposed.

(2) standard-setting and trade organizations related to the development of safety standards for inclined sleepers like the RNPS; and (3) third-party marketing companies that were involved in the marketing of the RNPS.  Further, Plaintiffs obtained discovery via FOIA requests submitted to the CPSC and the National Institute of Health.

      **K.**      Further, the Parties exchanged reports of independent experts, conducted expert depositions, briefed motions, and presented oral argument relating to experts.  Plaintiffs offered testimony from three experts related to the materiality of the marketing messaging of the RNPS and damages issues.  Defendants offered testimony from three competing experts on the same subject areas.  All six experts submitted written reports and were deposed by the Parties during class certification briefing.

      **L.**      On or about March 27, 2020, Christopher Ekman of CooganEkman LLC was selected as mediator to explore a potential settlement with the Parties, and, later, to facilitate and oversee any settlement discussions among the Parties.

      **M.**      On February 8, 2021, Plaintiffs filed their Motion for Class Certification ("First Class Motion") (ECF 125) and memorandum in support thereof (ECF 125-1) seeking, inter alia, to certify twelve statewide classes of RNPS purchasers under various states' consumer protection statutes, implied warranty, negligence, unjust enrichment claims, as well as nationwide class for injunctive relief for an Order directing Defendants to improve the terms of the Recall.  On June 16, 2021, Defendants filed their Opposition to the First Class Motion and memorandum in support thereof. (ECF 165, 166, 167).  On October 13, 2021, Plaintiffs filed their Reply in Further Support of their Motion for Class Certification. (ECF 202).

**N.**     On November 17, 2021, the Court issued an Amended Order, in which it decided to rule first on the class certification issue for the classes sought to be certified by the New York plaintiffs only.  (ECF 217).

**O.**     On December 13, 2021, Defendants filed their Sur-Reply in Opposition to Plaintiffs' Motion for Class Certification, which focused only on the proposed New York classes. (ECF 223).  After obtaining permission from the Court, on February 18, 2022, Plaintiffs filed a sur-sur-reply brief in further support of the certification of the proposed New York classes. (ECF 243).

**P.**     During class certification briefing, the parties also briefed and argued *Daubert* motions related to experts.  On June 17, 2021, Defendants filed their Motion to Exclude the Declaration and Opinions of Colin B. Weir. (ECF 168, 168-1, 168-2).  The Court held an evidentiary hearing on this Motion on September 27, 2021.  On October 19, 2021, the Court denied Defendants' Motion to Exclude the Declaration and Opinions of Colin B. Weir. (ECF 210).  On December 13, 2021, Defendants also moved to exclude Bruce Silverman and Dr. J. Michael Dennis, Plaintiffs' experts on the materiality of the RNPS marketing (ECF 222), which Plaintiffs opposed. (ECF 234).  The motion was initially denied by the Court (ECF 264) but was later renewed by Defendants (ECF 306) and again opposed by Plaintiffs. (ECF 314).

**Q.**     On February 25, 2022, Judge Crawford held a full-day class certification hearing focused on the certification of damages and injunctive relief classes, and related issues presented by the New York plaintiffs. (ECF 247).

**R.**     On June 2, 2022, the Court denied certification of a nationwide injunctive relief class and New York damages class under Rule 23(b)(2) and 23(b)(3) of the Federal Civil Rules of

Procedure, respectively, but certified an issues class of RNPS purchasers in New York pursuant to Rule 23(c)(4) as to liability issues. (ECF 254; ECF 260).

    **S.**    After the Court denied certification of the proposed New York classes pursuant to Rule 23(b)(3), Plaintiffs filed a petition with the Second Circuit Court of Appeals, pursuant to Rule 23(f), seeking leave to appeal the denial of certification (Case No. 22-1319). Defendants opposed Plaintiffs' petition. On October 5, 2022, the Second Circuit denied the petition. (ECF 269.)

    **T.**    After the certification of the New York Rule 23(c)(4) liability class, the Court ordered that discovery commence on liability issues. (ECF 260). The Parties exchanged further voluminous written and document discovery in preparation of a trial relating to the New York liability class, including the service of additional interrogatories and requests for production of documents, as well as requests for admissions. Plaintiffs processed and reviewed over 270,000 additional documents containing over a million pages related to RNPS, including, among others, additional documents concerning the development, design, and marketing of the RNPS, reports of incidents that occurred while infants were in an RNPS, and other disputed liability issues. Additionally, Plaintiffs worked to secure document discovery Defendants had exchanged with counsel for plaintiffs in certain wrongful death litigation related to the RNPS, which involved extensive negotiations with plaintiffs' counsel in those cases and with Defendants' counsel.

    **U.**    On September 8, 2022, the Court directed the Parties to submit briefing as to whether a California consumer class should be certified. (ECF 262). On October 21, 2022, Plaintiffs filed their Motion for Class Certification of the California Class (ECF 283) and memorandum in support thereof (ECF 284) ("Second Class Motion") seeking, inter alia, to certify a class of RNPS purchasers under California's consumer protection statutes, implied warranty, and unjust enrichment claims. On December 16, 2022, Defendants filed their Opposition to the Second

Class Motion and memorandum in support thereof. (ECF 296). On January 13, 2023, Plaintiffs filed their Reply in support of the Second Class Motion. (ECF 301).

V.      After the Court certified the New York issue class, on October 7, 2022, Defendants moved to dismiss the certified New York class for lack of standing of the named Plaintiffs (ECF 271), which Plaintiffs opposed. (ECF 284). The Court denied Defendants' motion to dismiss on February 8, 2023. (ECF 286).

W.      On December 1, 2022, the Court advised the Parties of his intent to schedule a trial for the New York liability class to commence in the spring of 2024. (ECF 291).

X.      On March 7, 2023, the Court set a hearing on the Second Class Motion for April 13, 2023, which was rescheduled for December 15, 2023 and later for February 23, 2024.

Y.      Beginning in 2020, the Parties engaged in extensive negotiations, including (1) a mediation with Mr. Ekman on September 10, 2020; (2) a virtual mediation via Zoom with Ms. Jill R. Sperber of Judicate West on April 12, 2022, which involved the exchange of numerous written settlement proposals; and (3) an in-person mediation with the Hon. Margaret Morrow and Mr. Ekman on March 27 and 28, 2023.  Additionally, the Parties had numerous discussions and communications with the mediators outside of the mediation sessions.

Z.      On February 13, 2024, the Parties informed the Court that they had reached a settlement in principle to fully resolve the Action. (ECF 325).

AA.      On July 2, 2024, the Parties engaged in an additional mediation before the Hon. Margaret Morrow and Mr. Ekman, via Zoom, concerning certain disputed issues relating to terms of the Settlement Agreement.

## II.  **DEFINITIONS**

A.  The following terms used in this Settlement Agreement and the attached exhibits shall have the meanings ascribed to them below for purposes of this Settlement Agreement:

1.  "Action(s)" refers to *In re: Fisher-Price Rock 'n Play Sleeper Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2903, including all Constituent Actions.

2.  "Approved Claims" means Claims that are submitted to and approved by the Settlement Administrator, to be paid out of the Settlement Fund.

3.  "Attorneys' Fees and Expenses" means such amounts as may be approved and awarded by the Court to Class Counsel to compensate all Plaintiffs' Counsel for their fees and expenses in this Action and the Settlement Agreement, as described in Section IX of this Settlement Agreement, to be paid out of the Settlement Fund.

4.  "CAFA Notice" means the notice to be sent by Settlement Administrator to appropriate federal and state officials pursuant to the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ("CAFA"), within ten (10) business days after the submission of this Settlement Agreement with the Court.  A copy of the served CAFA Notice shall be provided to Class Counsel. Class Counsel approves the sending of the CAFA Notice by the Settlement Administrator.

5.  "Claim" means the claim of a Settlement Class Member for compensation from the Settlement Fund.

6.  "Claimant" means a Settlement Class Member who has submitted a Claim Form for compensation from the Settlement Fund.

7.  "Claim Form" means the document in substantially the same form as Exhibit 6 attached to this Settlement Agreement by which a Claim shall be submitted for compensation from the Settlement Fund.

8.  "Claim Submission Period" means the time frame in which Settlement Class Members may submit a Claim Form for compensation from the Settlement Fund, which shall run from the Initial Notice Date up to and including ninety (90) days after the Court's issuance of the Final Approval Order and Final Judgment.

9.  "Claims Deadline" means the date by which all Claim Forms must be submitted online on the Settlement Website or postmarked, if mailed, to be considered timely, which shall be ninety (90) days after the Court's issuance of the Final Approval Order and Final Judgment.

10.  "Claims Process" means the process for submitting and reviewing Claims described in Section III.C, below, of this Settlement Agreement.

11.  "CAC" means the Consolidated Class Action Complaint filed in this Action on October 28, 2019.  (ECF 19).

12.  "Class Counsel" means Demet Basar, James B. Eubank and Paul Evans of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.

13.  "Class Notice" means the Notice Plan described in Section IV, below.

14.  "Class Period" means January 1, 2009 to the present.

15.  "Class Representatives" means Elizabeth Alfaro, Emily Barton, Linda Black, Luke Cuddy, Rebecca Drover, Megan Fieker, Karen Flores, Nancy Hanson, Jena Huey, Samantha Jacoby, Megan Kaden, Kerry Mandley, Cassandra Mulvey, Joshua Nadel, Melanie Nilius Nowlin, Daniel Pasternacki, Jessie Poppe, Katharine Shaffer, Emily Simmonds, Josie Willis, and Renee Wray.

16.  "Constituent Actions" means *Drover-Mundy, et. al. v. Fisher-Price, Inc., et al.,* C.A. No. 1:19-00512 (W.D.N.Y.); *Mulvey v. Fisher-Price, Inc., et al.*, C.A. No. 1:19-00518 (W.D.N.Y.); *Shaffer v. Mattel, Inc, et al.*, C.A. No. 1:19-00667 (W.D.N.Y.); *Nabong v. Mattel, Inc, et al.*, C.A.

No. 1:19-00668 (W.D.N.Y.); *Barton v. Mattel, Inc., et al.*, 1:19-00670 (W.D.N.Y.); *Kimmel v. Fisher-Price, Inc., et al.*, C.A. No. 1:19-00695 (W.D.N.Y.); *Cuddy v. Fisher-Price, Inc., et al.*, C.A. No. 1:19-00787 (W.D.N.Y.); *Nadel et al. v. Fisher-Price, Inc., et al.,* C.A. No. l:19-00791 (W.D.N.Y.); *Poppe v. Fisher-Price, Inc.*, et al*.,* C.A. No. l:19-00870 (W.D.N.Y.); *Pasternacki v. Fisher-Price, Inc., et al.*, C.A. No. 1:19-00941 (W.D.N.Y.); *Black v. Mattel, Inc., et al.*, C.A., C.A. No. 2:19-03209 (C.D. Ca.); *Flores v. Fisher-Price, Inc., et al.*, C.A. No. 8:19-01073 (C.D. Ca.); *Wray v. Fisher Price, et al.*, C.A. No. 1:19-01603 (D. Co.); *Fieker v. Fisher-Price, et al.*, C.A. No. 4:19-00295 (N.D. Ok.); *Hanson v. Fisher-Price, Inc.*, C.A. No. 19-00204 (D.S. Iowa.); *Willis v. Fisher-Price, Inc., et al.*, C.A. No. 3:19-00670 (M.D. Tn.), and any other action that may be centralized as part of the Action.

17.     "Court" or "WDNY" means the United States District Court for the Western District of New York.

18.     "Defendants" collectively means Mattel, Inc. and Fisher-Price, Inc.

19.     "Counsel for Defendants" means Matthew P. Kanny, Gerald J. Cedrone, and Ariel Rogers of Goodwin Procter LLP and Lori G. Cohen and Brandon D. Cox of Greenberg Traurig LLP.

20.     "Direct Notice" means the legal notice summarizing the terms of the proposed Settlement, substantially in the form attached as Exhibit 5, that shall be sent to Settlement Class Members as provided in Section IV.C, below, of this Settlement Agreement.

21.     "Effective Date" means (i) the day following the expiration of the deadline for appealing the entry by the Court of the Final Approval Order approving the Settlement Agreement and Final Judgement, if no appeal is filed; or (ii) if an appeal of the Final Approval Order and/or Final Judgment is filed, the date upon which all appellate courts with jurisdiction affirm such Final

Approval Order and/or Final Judgment, or deny any such appeal or petition for certiorari, such that no future appeal is possible.

22.     "Final Approval Hearing" means the hearing scheduled by the Court to consider the fairness, reasonableness and adequacy of this Settlement Agreement under Rule 23 of the Federal Rules of Civil Procedure, whether to certify the Settlement Class under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, whether to award Attorneys' Fees and Expenses and Class Representative Service Awards, and to determine whether a Final Approval Order and Final Judgment should be entered.

23.     "Final Approval Date" means the date on which the Court enters the Final Approval Order and Final Judgment.

24.     "Final Approval Order" means the Court's Order approving this Settlement Agreement, certifying the Settlement Class, and awarding any Attorneys' Fees and Expenses and Class Representative Service Awards. A proposed form of the Final Approval Order is attached hereto as Exhibit 9.

25.     "Final Judgment" means the Court's final judgment, which is to be on terms substantially consistent with this Agreement. A proposed form of the Final Judgment is attached hereto as Exhibit 8.

26.     "Fisher-Price" means Defendant Fisher-Price, Inc.

27.     "Fisher-Price Released Party(ies)" means Fisher-Price, individually and collectively, and each of their respective successors, assigns, past, present, and future parents, subsidiaries, sister companies, joint venturers, partnerships, related companies, affiliates, unincorporated entities, divisions and groups, and any entity that manufactured, tested, distributed, marketed, promoted, sold or offered to sell at wholesale or retail the RNPS, and each of their

respective directors, officers, shareholders, employees, agents, representatives, insurers, servants, partners, administrators and subcontractors. It is expressly understood that, to the extent that a Fisher-Price Released Party is not a Party to the Agreement, all such Released Parties are intended third party beneficiaries of the Agreement.

28.     "Initial Notice Date" means the date on which Direct Notice of this Settlement is first disseminated by the Settlement Administrator to the Settlement Class in accordance with the Notice Plan.

29.     "Long Form Notice" means the Long Form Notice substantially in the form attached hereto as Exhibit 4 that shall be available to Class Members as provided in Section IV.E, below, of this Settlement Agreement.

30.     "Mattel" means Defendant Mattel, Inc.

31.     "Mattel Released Party(ies)" means Mattel, individually and collectively, and each of their respective successors, assigns, past, present, and future parents, subsidiaries, sister companies, joint venturers, partnerships, related companies, affiliates, unincorporated entities, divisions and groups, and any entity that manufactured, tested, distributed, marketed, promoted, sold or offered to sell at wholesale or retail the RNPS, and each of their respective directors, officers, shareholders, employees, agents, representatives, insurers, servants, partners, administrators and subcontractors. It is expressly understood that, to the extent that a Mattel Released Party is not a Party to the Agreement, all such Released Parties are intended third party beneficiaries of the Agreement.

32.     "Net Settlement Fund" means the Settlement Fund, plus any interest or investment income earned on the Settlement Fund, less any (a) Attorneys' Fees and Expenses; (b) Class Representative Service Awards; (c) Taxes; and (d) Settlement Administration Expenses.

33.     "Non-Profit Residual Recipient" means the Children's Health Fund, a 26 U.S.C. 501C(3) non-profit organization.

34.     "Notice Plan" means the notice plan attached hereto as Exhibit 3 and the plans and methods set forth in Section IV, below, of this Settlement Agreement.

35.     "Parties" means Class Representatives, Fisher-Price, and Mattel collectively, as each of those terms is defined in this Settlement Agreement.

36.     "Plaintiffs' Counsel" means Class Counsel; Bursor & Fisher, P.A; Sorkowitz Law, P.C.; DeNittis Osefchen Prince, P.C.; Smolen & Roytman; Lockridge Grindal Nauen P.L.L.P.; Caruso Law Firm, P.C.; Kantrowitz, Goldhamer & Graifman, P.C.; Longman Law, P.C.; Reich Radcliffe & Hoover LLP; Forchelli Deegan Terrana LLP; Stranch, Jennings & Garvey, PLLC; Cory Watson P.C.; Pittman, Dutton & Hellums, P.C.; Shindler Anderson Goplerud & Weese PC; Cuneo Gilbert & Laduca, LLP; Wolf Haldenstein Adler Freeman & Herz LLP; and Connors LLP, as liaison counsel.

37.     "Preliminary Approval Order" means the Court's Order preliminarily approving the Settlement Agreement and preliminarily certifying the Settlement Class.  A proposed form of the Preliminary Approval Order is attached hereto as Exhibit 2.

38.     "Proof of Disablement" means photographs showing, in full, all of the following: (i) the liner of the RNPS, detached from the frame and cut along the length of the product from head to toe and along the frame, such that it is no longer attached to the frame; (ii) the pad removed from the RNPS and cut so it can no longer be attached to the product; (iii) a unique alpha/numeric code written in permanent marker on the fabric that has been cut; and (iv) the date code and SKU stamp on the inside of the hub of the RNPS, all to be submitted in accordance with the written and video instructions set forth on the Settlement Website.

39.    "Proof of Purchase" or "POP" means evidence supporting a Claim for compensation from the Settlement Fund such as a receipt or order confirmation from a retailer, credit card statement, canceled check, or other reasonable and practicable physical evidence as may be accepted by the Settlement Administrator, which shows the date of purchase and the Purchase Price of the RNPS.

40.    "Purchase Price" means the retail price of an RNPS paid by the Settlement Class Member and does not include taxes paid thereon.

41.    "Recall" means the April 12, 2019 recall of the RNPS jointly announced by the CPSC and Fisher-Price, including all reannouncements and updates thereto.

42.    "Recall Date" means April 12, 2019.

43.    "Recall Remedy" means relief available to consumers pursuant to the Recall Terms.

44.    "Recall Terms" means the terms of the Recall, under which, once consumers shipped the product hubs to Defendants, (i) consumers who owned an RNPS originally purchased new (including by a prior owner of the product) on or after October 12, 2018, were to receive a full cash refund, plus sales taxes paid if accompanied by a receipt; and (ii) consumers who owned an RNPS originally purchased new (including by a prior owner of the product) before October 12, 2018, were to receive a voucher for a Fisher-Price product to be selected from a list to be provided by Fisher-Price and determined by the original date of purchase or date of manufacture of the product.

45.    "Released Claims" means the claims released as set forth in Section VII of this Settlement Agreement.

46.    "Released Parties" collectively means the Mattel Released Parties and the Fisher-Price Released Parties.

47.     "Request for Exclusion" means the written communication from a Settlement Class Member in which they request to be excluded from the Settlement, as described in Section V of this Agreement.

48.     "RNPS" means all models of the Fisher-Price Rock 'n Play Sleeper, which are identified in Exhibit 1 of this Settlement Agreement.

49.     "Service Awards" means the amount of remuneration to be paid to the Class Representatives to compensate them for their efforts on behalf of the Settlement Class, in an amount to be approved and ordered by the Court, as set forth in Section IX of this Settlement Agreement.

50.     "Settlement" means the settlement embodied in this Settlement Agreement.

51.     "Settlement Agreement" means this Settlement Agreement and its Exhibits which are incorporated herein, including any subsequent amendments and subsequent exhibits that are agreed to by the Parties in writing and approved by the Court.

52.     "Settlement Amount" means the one-time, total lump sum gross principal settlement amount of Nineteen Million Dollars and No Cents ($19,000,000.00) that will be paid by the Defendants pursuant to Section III.A.1 of this Settlement Agreement.

53.     "Settlement Administrator" means the Court-appointed third-party agent or administrator agreed to by the Parties and presented to the Court by Plaintiffs for appointment to send the CAFA Notice, implement the Notice Plan, and address the Claims Process. The Settlement Administrator shall be required to execute the Protective Order entered in this Action. (ECF 18).

54.     "Settlement Administration Expenses" means the reasonable fees and costs incurred by the Settlement Administrator in relation to this Settlement that are invoiced and approved by Plaintiffs, subject to Section III.A.5 and Section III.A.6 of this Agreement, or

otherwise approved by the Court, including those arising from performing any duty or obligation created by this Settlement Agreement, providing Notice, effectuating the Notice Plan, establishing and maintaining the Settlement Fund, processing Claims, responding to inquiries from Settlement Class Members, providing payment of Approved Claims, related services, and all costs of the escrow account.

55.     "Settlement Class" or "Settlement Class Members" means Class Representatives and all Persons in the United States, the District of Columbia, Puerto Rico, and all other United States territories and/or possessions who, during the Class Period, (a) purchased (including to be given as a gift to another Person) or acquired (including by gift) an RNPS, or (b) have an RNPS in their possession.  Excluded from the Class are: (i) Persons who participated in the Recall and received a cash refund; (ii) Persons who purchased an RNPS for the sole purpose of resale to consumers at wholesale or retail; (iii) Defendants, their subsidiaries, and their legal representatives, successors, assignees, officers, directors and employees; (iv) Plaintiffs' Counsel; and (v) judicial officers and their immediate family members and associated court staff assigned to this case.  In addition, persons or entities are not Settlement Class Members once they timely and properly exclude themselves from the Class, as provided in this Settlement Agreement, and once the exclusion request is finally approved by the Court.

56.     "Settlement Fund" means the non-reversionary cash fund holding the Settlement Amount, plus any interest that may accrue thereon after deposit into an escrow account.

57.     "Settlement Payments" means payments made to Settlement Class Members on Approved Claims, to be paid from the Settlement Fund.

58.     "Settlement Website" means a website established by the Settlement Administrator to provide information about the Settlement, including deadlines and case documents, and to

permit Settlement Class Members to electronically submit Claim Forms.  The Settlement Website shall not reveal any personal or confidential information belonging to any person to the public.

59.     "Taxes" means (i) any and all applicable taxes, duties and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction, if any, with respect to the income or gains earned by or in respect of the Escrow Account, including, without limitation, any taxes that may be imposed upon Defendants or their counsel with respect to any income or gains earned by or in respect of the Escrow Account for any period while it is held in the Escrow Account; (ii) any other taxes, duties and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) relating to the Escrow Account that the Settlement Administrator determines are or will become due and owing, if any; and (iii) any and all expenses, liabilities and costs incurred in connection with the taxation of the Settlement Fund escrow account or otherwise.

60.     "Unclaimed Funds" means any amounts remaining in the Settlement Fund after all Settlement Payments, Service Awards, Attorneys' Fees and Expenses, Taxes, and Settlement Administration Expenses have been paid.

**B.**     Other capitalized terms used in this Settlement Agreement but not defined in this Section shall have the meanings ascribed to them elsewhere in this Settlement Agreement.

**C.**     The terms "he or she" and "his or her" include "them," "they," "their," "it," or "its," where applicable.

## III.   <u>SETTLEMENT RELIEF</u>

In consideration for the dismissal of the Actions against Defendants with prejudice and the Releases set forth in Section VII below, Defendants agree as follows:

A.      **Cash Settlement**

1.      <u>Payment of Settlement Amount</u>. Within five (5) business days after (i) the Court enters the Preliminary Approval Order, (ii) receipt by Defendants of wiring instructions to the common fund escrow account described in Section III.A.2 of this Settlement Agreement, and (iii) receipt of a W-9 from the Settlement Administrator, whichever is later, Defendants shall wire the non-reversionary cash Settlement Amount of Nineteen Million Dollars and No Cents ($19,000,000.00) into the Settlement Fund, to be distributed in accordance with this Settlement Agreement.  This amount is intended to fully and completely compensate Settlement Class Members for any and all Released Claims against any and all Released Parties and to fully and completely pay for all Taxes, Class Representative Service Awards, Attorneys' Fees and Expenses, and Settlement Administration Expenses to be paid pursuant to this Settlement Agreement, and any other costs and expenses incurred by the Settlement Class as a result of this Action or this Settlement Agreement.   The Parties agree that Defendants will provide the Settlement Administrator with an IRS Form 1099 or other necessary tax form(s) for the lump sum payment made pursuant to this Settlement Agreement.  Defendants make no representation as to the tax treatment of any payment(s) made pursuant to this Settlement Agreement and shall not be responsible for any Taxes owed or to be paid as a result of this Settlement Agreement.

2.      <u>Settlement Fund</u>. The Settlement Amount shall be placed in a non-reversionary common fund escrow account at a financial institution approved by Class Counsel and Defendants and, pursuant to Section VIII of this Settlement Agreement, the Settlement Fund shall be established and maintained by the Settlement Administrator as a qualified settlement fund for federal tax purposes pursuant to Treas. Reg. § 1.468 B-1, *et seq*. The Settlement Administrator shall be responsible for all administrative, accounting and tax compliance activities in connection with the Settlement Fund.

3.      Use of the Settlement Fund. As described in this Settlement Agreement, the Settlement Fund shall be used by the Settlement Administrator to pay for: (i) all Settlement Administration Expenses; (ii) any Taxes; (iii) any Class Representative Service Awards; (iv) any Attorneys' Fee and Expense Award; and (v) Settlement Payments, as provided in Section III.B of this Agreement and as approved by the Court.

4.      Non-Reversionary Settlement. This Settlement shall be non-reversionary, meaning that no part of the Settlement Amount will revert to Defendants. If there are any funds remaining in the Settlement Fund after all Approved Claims are paid in accordance with this Settlement Agreement, the Settlement Administrator shall distribute any Unclaimed Funds in the Net Settlement Fund to the Non-Profit Residual Recipient, consistent with the Final Approval Order.

5.      Withdrawal Authorization. No amounts from the Settlement Fund may be withdrawn unless (i) expressly authorized by this Settlement Agreement, or (ii) approved by the Court. Class Counsel may authorize the periodic payment of actual Settlement Administration Expenses from the Settlement Fund as such expenses are invoiced without further order of the Court; provided, however, that, in accordance with Section III.A.6 below, prior to the Effective Date, Class Counsel may not authorize the payment of Settlement Administration Expenses in excess of $250,000.00.

6.      Use of Settlement Funds Prior to the Effective Date.  Prior to the Effective Date, the only monies that may be distributed from the Settlement Fund are Settlement Administration Expenses incurred by the Settlement Administrator, up to a total of Two Hundred Fifty Thousand Dollars ($250,000.00).  Class Counsel is authorized to pay from the Settlement Fund Settlement Administration Expenses that are incurred, invoiced, and approved by Class Counsel prior to the Effective Date up to $250,000.00, without further order of the Court.

7.      <u>Administration and Distribution of the Settlement Fund</u>. The Settlement Administrator, subject to such supervision and direction of the Court and Class Counsel as may be necessary or as circumstances may require, shall administer and oversee distribution of the Settlement Fund to Settlement Class Members pursuant to this Agreement.   No Settlement Payments may be distributed to Settlement Class Members prior to the Effective Date.

B.      **Settlement Payments to Settlement Class Members**

Settlement Class Members who timely file Claims by the Claims Deadline and comply with all other conditions and requirements specified in this Settlement Agreement, and whose Claims are validated as Approved Claims by the Settlement Administrator, shall have the right to obtain relief, as follows:

1.      <u>Settlement Class Members Who Participated in the Recall and Returned an RNPS or its Hub Pursuant to the Recall</u>. Settlement Class Members who previously participated in the Recall and returned an RNPS or its hub pursuant to the Recall prior to the Initial Notice Date and who received a voucher for a product as a Recall Remedy shall be entitled to a Settlement Payment of $10.00 for each RNPS or hub returned.

2.      <u>Settlement Class Members Who Currently Own an RNPS and Did Not Participate in the Recall</u>. Settlement Class Members who currently own an RNPS and who did not participate in the Recall ("Current Owners") must submit Proof of Disablement and a valid Claim Form to be entitled to a Settlement Payment.   Current Owners shall be entitled to the following relief for each RNPS for which they have submitted Proof of Disablement and a valid Claim Form:

(a)      Current Owners who submit a valid Proof of Purchase of an RNPS purchased between October 12, 2018 and the Recall Date are entitled to a Settlement Payment in the amount of the Purchase Price of that RNPS as shown on the Proof of Purchase, but no less than $60.

(b)     Current Owners who (i) either purchased an RNPS between October 12, 2018 and the Recall Date or who own an RNPS that was manufactured on or after October 12, 2018, and (ii) do not submit a valid Proof of Purchase, are entitled to a Settlement Payment of $60.00.

(c)     Current Owners who purchased an RNPS between April 12, 2017 and October 11, 2018, or who own an RNPS that was manufactured between April 12, 2017 and October 11, 2018, are entitled to a Settlement Payment of $50.00.

(d)     Current Owners who purchased an RNPS on or before April 11, 2017, or who own an RNPS that was manufactured on or before April 11, 2017, are entitled to a Settlement Payment of $40.00.

(e)     If no Proof of Purchase is provided, the date the RNPS was manufactured shall be used to determine the Settlement Payment to which a Current Owner is entitled. The date of manufacture is evidenced by a date code stamped on the inside of the hub of the RNPS, a photo of which shall be submitted with the Claim Form as part of the Proof of Disablement.

(f)     The total amount from the Net Settlement Fund to be used to make Settlement Payments to Current Owners with Approved Claims shall be capped at $4,750,000.00 (Four Million Seven Hundred Fifty Thousand Dollars) ("Current Owners' Fund").

(g)     An additional sum of no less than $250,000.00 (Two Hundred Fifty Thousand Dollars) from the Net Settlement Fund shall be placed in a set-aside fund ("Current Owners' Set-Aside Fund") to make Settlement Payments for Current Owner Claims that are submitted pursuant to Section III.E of this Settlement Agreement.

(h)     In the event that the total amount of Settlement Payments on Approved Claims for Current Owners exceeds the total amount of  the Current Owners' Fund in Section III.B.2.f., and if additional funds are not available as described in Section III.B.4 below, the Settlement Payment for each Approved Claim to Current Owners shall be reduced pro rata, such that the total of Settlement Payments made to Current Owners is equal to the total allocated to the Current Owners' Fund in Section III.B.2.f.

3.      <u>Settlement Class Members Who Do Not Currently Own an RNPS and Have Proof of Purchase</u>. Settlement Class Members who purchased an RNPS new (including to be given as a gift for another Person) and who (a) did not return the RNPS or a hub pursuant to the Recall, (b) do not currently own an RNPS (such that they are not entitled to relief set out in Sections III.B.2), and (b) have a Proof of Purchase ("POP-Purchasers"), must submit a copy of their Proof of Purchase and a valid Claim Form to be entitled to a Settlement Payment.  POP-Purchasers shall be entitled to the following relief for each RNPS for which they have submitted Proof of Purchase and a valid Claim Form:

(a)     Settlement Class Members who submit Proof of Purchase dated between April 12, 2017 and the Recall Date are entitled to a Settlement Payment of $35 for each new RNPS purchased.

(b)     Settlement Class Members who submit Proof of Purchase dated on or before April 11, 2017 are entitled to a Settlement Payment of  $25 for each new RNPS purchased.

(c)     The total amount from the Net Settlement Fund to be used to make Settlement Payments to POP-Purchasers with Approved Claims shall be capped at $4,750,000.00 (Four Million Seven Hundred Fifty Thousand Dollars) ("POP-Purchasers' Fund").

(d)     An additional sum of no less than $250,000.00 (Two Hundred Fifty Thousand Dollars) from the Net Settlement Fund shall be placed in a set-aside fund ("POP-Purchasers' Set-Aside Fund") for Settlement Payments for POP-Purchaser Claims that are submitted pursuant to Section III.E of this Settlement Agreement.

(e)     In the event that the total amount of Settlement Payments on Approved Claims for POP-Purchasers exceeds the total amount of the POP-Purchasers' Fund in Section III.B.3.c, and if additional funds are not available as described in Section III.B.4 below, the Settlement Payments for each Approved Claim to POP-Purchasers shall be reduced pro rata, such that the total of Settlement Payments made to POP-Purchasers is equal to the total allocated to the POP-Purchasers' Fund in Section III.B.3.c.

4.     <u>Undersubscription or Oversubscription of Current Owners' Fund or POP-Purchasers' Fund</u>. In the event that the total amount of Settlement Payments for Approved Claims for the Current Owners Fund or POP-Purchasers' Fund is less than either Funds' respective cap, the remaining funds will be allocated as follows:

(a)     In the event that the total amount of Settlement Payments for Approved Claims for Current Owners is less than the total allocated to the Current Owners' Fund, the first $375,000 of remaining funds shall be added to the Current Owners' Set-Aside Fund. If the Current Owners' Fund is still not exhausted, and if Approved Claims for POP-Purchasers exceed the POP-Purchasers' Fund, any remaining funds in the Current Owners' Fund shall be moved to the POP-Purchasers' Fund, up to the amount required to avoid a pro rata reduction in Settlement Payments to POP-Purchasers.  If the Current Owners' Fund is still not exhausted, any remaining funds shall be added to the Current Owners' Set-Aside Fund.

(b)    In the event that the total amount of Settlement Payments for Approved Claims for POP-Purchasers is less than the total allocated to the POP-Purchasers' Fund, the first $375,000.00 of remaining funds shall be added to the POP-Purchasers' Set-Aside Fund.  If the POP-Purchasers' Fund is still not exhausted, and if Approved Claims for Current Owners exceed the Current Owners' Fund, any remaining funds in the POP-Purchasers' Fund shall be moved to the Current Owners' Fund, up to the amount required to avoid a pro rata reduction in Settlement Payments to Current Owners.  If the POP-Purchasers' Fund is still not exhausted, any remaining funds shall be added to the POP-Purchasers' Set-Aside Fund.

(c)    In the event that the total amount of Settlement Payments for Approved Claims for both Current Owners and POP-Purchasers is less than the total allocated to their respective Funds, any funds remaining in the Current Owners' Fund shall be placed in the Current Owners' Set-Aside Fund, and any funds remaining in the POP-Purchasers' Fund shall be added to the POP-Purchasers' Set-Aside Fund.

5.    <u>Settlement Class Members Who Do Not Currently Own an RNPS and Do Not Have Proof of Purchase</u>. Settlement Class Members who (i) purchased a new RNPS (including to be given as a gift to another Person), (ii) did not return that RNPS or a hub pursuant to the Recall, and (iii) do not currently own an RNPS or have Proof of Purchase (such that they are not entitled to relief set out in Sections III.B.2 or III.B.3) ("No POP-Purchasers") must submit a valid Claim Form to be entitled to receive a Settlement Payment of $10.  The total amount from the Net Settlement Fund to be used to make Settlement Payments to No POP-Purchasers with Approved Claims shall be capped at One Million Dollars ($1,000,000.00) ("No POP-Purchasers' Fund").  In the event that Settlement Class Members file Approved Claims under this Section in an amount

exceeding $1,000,000.00, each Approved Claim under this Section shall be reduced pro rata, such that the total of all Approved Claims is equal to $1,000,000.00.

6.      Settlement Class Members who purchased or were gifted a used RNPS and who (a) returned an RNPS or its hub pursuant to the Recall and received a full refund, or (b) do not qualify as a Current Owner pursuant to Section III.B.2, shall not be entitled to a Settlement Payment under this Settlement.

7.      Settlement Class Members who participate in this Settlement shall not be entitled to later participate in the Recall Remedy.

8.      The Claim Form shall advise Settlement Class Members that they should consult their tax advisor regarding any tax ramifications of receiving any Settlement Payment under this Settlement Agreement. The Parties agree that Class Representatives, Class Counsel, Plaintiffs' Counsel, Defendants, and Defendants' Counsel are not providing any opinion or advice concerning the tax consequences of receiving any payments under this Settlement Agreement.

**C.      Claims Process**

1.      During the Claim Submission Period, Settlement Class Members may submit Claims for payments from the Settlement Fund. The Claim Form shall be available on the Settlement Website and can be submitted online or in hard copy.  In no event shall a Settlement Class Member be entitled to submit more than one Claim Form per RNPS.  Claims must be submitted with Proof of Purchase and/or Proof of Disablement, as applicable, in accordance with Sections III.B.2 and III.B.3.  Each Claim Form will be assigned a unique identifier that will be used by Settlement Class Members to track their Claims.

2.      During the twenty-four (24) months following the Effective Date, Defendants shall (i) provide notice on the Recall website of this Settlement and provide a link on the Recall website to the Settlement Website, and (ii) if Defendants receive any claims under the Recall during this

time period, on a monthly basis, they shall inform the Settlement Administrator and Class Counsel of the receipt of the claim and provide, if reasonably available, the names, addresses and email addresses of consumers who submitted such claims and whether the consumer submitted their RNPS to Mattel pursuant to the Recall.

3.      Class Members may choose to participate in the Recall or the Settlement in their sole discretion but shall not be entitled to participate in both the Settlement and the Recall.

4.      The Settlement Administrator shall administer the review and processing of Claims pursuant to the Court's Preliminary Approval Order.

5.      The Settlement Administrator shall have the authority to determine whether Claim Forms submitted by Settlement Class Members are timely, valid, and complete.

6.      The Settlement Administrator will review all submitted Claim Forms to determine whether the Claim meets all of the qualifications for payment, and, if so, determine the amount of the Settlement Payment the Class Member is entitled to receive in accordance with Section III.B and Section III.E of this Settlement Agreement. The Settlement Administrators' review period for submitted Claims shall not be required to commence prior to the Effective Date.

7.      If a Claim is incomplete or otherwise deficient, the Settlement Administrator shall email a notice to the Claimant if an email address was provided, or, if no email address was provided, mail a notice of deficiency letter to the Claimant, requesting that the Claimant complete and/or correct the deficiencies and resubmit the Claim Form within thirty (30) days of the date of the email and/or letter from the Settlement Administrator.  If the Claimant fails to timely provide the requested documentation or information, the deficient Claim (or deficient portion thereof) shall be denied without further processing. If the Claimant timely provides the requested documentation or information, the Settlement Administrator shall process the Claim in the ordinary course.

8.      Any Settlement Class Member whose Claim is rejected in full shall not receive any payment for the Claim submitted and shall, in all other respects, be bound by the terms of the Settlement Agreement and by the Final Approval Order and Final Judgment entered in the Action. Similarly, any Settlement Class Member whose Claim is approved in part and rejected in part shall not receive any payment for that portion of the Claim that is rejected and shall, in all other respects, be bound by the terms of the Settlement Agreement and by the Final Approval Order and Final Judgment entered in the Action.

9.      No person shall have any claim against the Released Parties, Settlement Administrator, Class Representatives, Settlement Class, Class Counsel, Plaintiffs' Counsel, or Defendants' Counsel based on any eligibility determinations.

**D.      Payment of Claims**

1.      Settlement Class Members who submit Claims on the Settlement Website shall have the option to receive Settlement Payments via a digital method, such as Venmo, PayPal, or digital payment card,  or via physical check sent by the Settlement Administrator. Claim Forms submitted by mail will receive any Settlement Payment by physical check.

2.      The Settlement Administrator shall send Settlement Payments on Approved Claims from the Net Settlement Fund by digital payment (as described above) or physical check, as elected by each Settlement Class Member with an Approved Claim, in accordance with Section III.F of this Settlement Agreement.

3.      Each Settlement Payment issued to a Settlement Class Member via a physical check will state on the face of the check that it will become null and void unless cashed within ninety (90) days after the date of issuance.

4.      For any checks that are uncashed by Settlement Class Members after ninety (90) days, the Settlement Administrator shall seek to contact the Settlement Class Members with the

uncashed checks and, if successful in reaching the Settlement Class Member, shall attempt to make the Settlement Payment, including, but not limited to, by reissuing checks.  Reissued checks that are not cashed within ninety (90) days after issuance shall become null and void.

5.      In the event that an electronic deposit or digital payment to a Settlement Class Member is unable to be processed, the Settlement Administrator shall attempt to contact the Settlement Class Member within thirty (30) days to correct the problem.

6.      To the extent that a check issued or reissued to a Settlement Class Member is not cashed within ninety (90) days after the date of issuance or reissuance, or an electronic deposit is unable to be processed within ninety (90) days of the first attempt, such funds shall remain in the Settlement Fund for disposition pursuant to Section III.E of this Settlement Agreement.

E.      **Additional Claims Administration**

1.      For a period of twenty-four (24) months from the Effective Date, or until the Net Settlement Fund is exhausted, whichever is earlier, people who believe that they are Settlement Class Members eligible for the relief provided in Section III.B of this Settlement Agreement, but who claim that they did not receive notice or were unaware of the Settlement prior to the Claims Deadline, may contact the Settlement Administrator or Class Counsel and seek to participate in the Settlement. If the Settlement Administrator determines that the person is a Settlement Class Member, the Settlement Administrator shall permit the Settlement Class Member to submit a Claim if the Net Settlement Fund is not exhausted.

2.      If the Settlement Administrator determines that (i) the Claim Form submitted by the Settlement Class Member pursuant to Section III.E.1 is valid and complete, and (ii) the Settlement Class Member has submitted a valid Proof of Disablement, the Settlement Class

Member will be entitled to a Settlement Payment as provided in Section III.B.2, to be paid from the Current Owners' Set-Aside Fund.

3.      If the Settlement Administrator determines that (i) the Claim Form submitted by the Settlement Class Member pursuant to Section III.E.1 is valid and complete, and (ii) the Settlement Class Member has submitted a valid Proof of Purchase, the Settlement Class Member will be entitled to a Settlement Payment as provided in Section III.B.3, to be paid from the POP-Purchasers' Set-Aside Fund.

4.      If the Settlement Administrator determines that the Claim Form submitted by the Settlement Class Member pursuant to Section III.E.1 is valid and complete and the Settlement Class Member does not submit a valid Proof of Disablement or Proof of Purchase, the Settlement Class Member will be entitled to a Settlement Payment as provided in Section III.B.5 if the No POP-Purchasers' Fund is not exhausted. In the event that Settlement Class Members file Approved Claims under this Section III.E.4 and under Section III.B.5 in an amount less than $1,000,000.00, the remaining funds in the No POP-Purchasers' Fund shall be split equally between and added to the Current Owners Set-Aside Fund and POP-Purchasers' Set-Aside Fund.

F.      **Distribution of Settlement Payments**

1.      The Settlement Administrator shall calculate Settlement Payments due on all Approved Claims in accordance with Section III.B and shall complete its initial distribution of Settlement Payments on all timely filed and Approved Claims as soon as practicable and shall use its reasonable best efforts to complete the initial distribution no later than six (6) months after the Effective Date.

2.      For Claims submitted pursuant to Section III.E., the Settlement Administrator shall calculate Settlement Payments due on any Approved Claims and shall use reasonable best efforts

to complete distributions of Settlement Payments on Approved Claims every six (6) months, with funds from the Current Owners' Set-Aside Fund, the POP-Purchasers' Set-Aside Fund, or the No-POP-Purchasers' Fund, as the case may be. Additional distributions in the same manner shall be made every (6) months until the expiration of twenty-four (24) months after the Effective Date; provided, however, that Class Counsel, after consultation with the Settlement Administrator, in its sole discretion, may authorize that distributions may be made before or after six (6) months after the date of the previous distribution, subject to Court approval. The Settlement Administrator shall use its reasonable best efforts to complete a final distribution no later than forty-five (45) days after the expiration of twenty-four (24) months following the Effective Date.  No Claims may be submitted after the expiration of twenty-four (24) months following the Effective Date.

3.      After the expiration of twenty-four (24) months from the Effective Date, if the Settlement Fund is still not exhausted, Class Counsel will confer with the Settlement Administrator to determine if it is economically feasible to make additional Settlement Payments to Settlement Class Members who filed Approved Claims. If so, Class Counsel, in its sole discretion, may recommend that additional Settlement Payments be made to Settlement Class Members, subject to Court approval.  If approved by the Court, Class Counsel shall make additional Settlement Payments consistent with the Court's ruling, so long as the total amount of the Settlement Payments for each Approved Claim does not exceed the Purchase Price of the RNPS.

4.      Any Unclaimed Funds remaining in the Net Settlement Fund, after distribution is made pursuant to Section III.B through Section III.F.3 of this Settlement Agreement, shall be paid to the Non-Profit Residual Recipient.

G.      **Settlement Administration**

1.      The Settlement Administrator shall administer the relief provided by this Settlement Agreement by providing Notice and processing Settlement Claims in a reasonable, cost effective,

and timely manner. The Settlement Administrator shall maintain reasonably detailed records of its activities under this Agreement. Without limiting the foregoing, the Settlement Administrator shall:

      (a)     Receive Requests for Exclusion from the Class and promptly provide Class Counsel and Counsel for Defendants copies thereof. If the Settlement Administrator receives any Requests for Exclusion after the deadline for the submission of such forms, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and Defendant's Counsel;

      (b)     Agree to be bound by the terms of the Protective Order entered in this Action;

      (c)     Obtain from Defendants Customer Contact Information for potential and known Settlement Class Members in accordance with the terms of the Protective Order entered in this Action;

      (d)     Obtain from third party retailers contact information for potential and known Settlement Class Members;

      (e)     Effectuate the Notice Plan in accordance with this Agreement and the Preliminary Approval Order;

      (f)     Establish and maintain a post office box for mailed Claim Forms and Requests for Exclusions;

      (g)     Establish and maintain the Settlement Website that, among other things, will allow Settlement Class Members to submit Settlement Claims electronically;

(h)     Establish and maintain a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, which includes an IVR (interactive voice response) in English and Spanish, and respond to such inquiries;

(i)      Respond to any mailed or emailed Settlement Class Member inquiries;

(j)      In advance of the Final Approval Hearing, prepare affidavits to submit to the Court that: (i) attest to implementation of the Notice Plan in accordance with the Preliminary Approval Order; and (ii) identify each Settlement Class Member who timely and properly provided a valid Request for Exclusion;

(k)     Review, determine the validity of, and process all Claim Forms submitted by Claimants, pursuant to the criteria set forth in this Agreement;

(l)      Distribute the Settlement Fund in accordance with the terms and conditions of this Agreement;

(m)    Provide monthly reports and a final report to Class Counsel and Defendants Counsel that summarize the number of Claims since the prior reporting period, the total number of Claims received to date, the number of any Claims approved and denied since the prior reporting period, the total number of Claims approved and denied to date, the total number of Approved Claims that were paid since the prior reporting period together with the Settlement Payment Amounts, the total number of Approved Claims that were paid to date together with the Settlement Payment amounts, and other pertinent information as requested by Class Counsel;

(n)     Maintain reasonably detailed records of its activities under this Agreement, which shall be available to Class Counsel, upon request;

(o)     Provide monthly reports to Class Counsel and Defendants that show the Settlement Class Members  who (i) submitted Claims to participate in the Settlement; (ii) submitted Claim Forms with Proof of Disablement of an RNPS pursuant to Section III.B.2, and/or (iii) submitted Claim Forms attesting that they previously destroyed and/or discarded their RNPS; and

(p)     Provide monthly reports to Class Counsel and Defendants that list the consumers who submitted claims under the Recall, as reported by Defendants under Section III.C.2(ii), who also filed a Claim under the Settlement.

(q)     Make available for inspection by Class Counsel and Defendants' Counsel the Claim Forms and any supporting documents, and any other information relating to Claims, received by the Settlement Administrator on reasonable notice.

2.     The Settlement Administrator shall maintain staffing sufficient to perform all duties delegated to the Settlement Administrator in this Settlement Agreement and shall appoint a designated staff member to act as liaison with Class Counsel and Defendants' Counsel.

3.     The Settlement Administrator shall employ reasonable procedures to screen submitted Claim Forms for abuse or fraud and deny Claims fraudulent Claims. The Settlement Administrator shall use reasonable fraud-prevention mechanics to prevent (i) submission of Claim Forms by persons other than potential Settlement Class Members; and (ii) submission of more than one Claim per RNPS.  In the event a Claim Form is submitted without a unique Settlement Class Member identifier, the Settlement Administrator shall employ reasonable effort to ensure the Claim is valid. The Settlement Administrator is authorized to contact any Settlement Class Member (by email, telephone, or U.S. mail) to seek clarification regarding a submitted Claim prior to determining its validity.

4.      Pursuant to the Preliminary Approval Order and subject to the Protective Order entered in this case, Defendants agrees to work with the Settlement Administrator in good faith to provide information the Settlement Administrator reasonably believes is necessary to (i) validate Claims, (ii) calculate Settlement Payments to Settlement Class Members, and (iii) make determinations on whether Claimants, objectors or Persons who submitted Requests for Exclusion are Settlement Class Members.

5.      If the Settlement Administrator makes a material or fraudulent misrepresentation to any party, conceals requested material information, or fails to perform adequately on behalf of the Class, the matter shall be referred to the Court for resolution.

> **H.      Settlement Oversight**

1.      During the twenty-four (24) months after the Effective Date, the Settlement Administrator shall provide monthly reports to Class Counsel concerning the implementation of and Settlement Class Member participation in the Settlement. The Settlement Administrator shall promptly provide documents and data in response to reasonable requests from Class Counsel, including, without limitation, data concerning approval and denial of Claims.

## IV.      NOTICE TO THE CLASS

> **A.      Class Notice**

Class Notice will be accomplished through a combination of Direct Notice, Publication Notice (including digital and social media notice), the Settlement Website, and Long Form Notice, and such other notice as Class Counsel and the Settlement Administrator believe is required by Fed. R. Civ. P. 23, the Due Process Clause of the United States Constitution, and all other applicable statutes, laws and rules, including those described below, as well as those in the Preliminary Approval Order, the Declaration of the Settlement Administrator and the Notice Plan

(attached hereto as Exhibits 7 and 3), and this Settlement Agreement.  The Notice Plan shall be carried out in substantially the manner provided in this Settlement Agreement.

B.  **Customer Contact Information**

The Preliminary Approval Order shall require Defendants to produce, if reasonably available, (i) the names, addresses and email addresses of consumers who participated in the Recall, and (ii) the names, addresses and email addresses of consumers who either registered the RNPS with Defendants or with whom Defendants learned in the ordinary course may have purchased or acquired an RNPS ("Customer Contact Information").  After the Settlement Administrator agrees to be bound by the Protective Order in this case, Defendants will cause such Customer Contact Information to be delivered to the Settlement Administrator within five (5) business days after the Court's entry of the Preliminary Approval Order.  The Customer Contact Information provided pursuant to the Court's Preliminary Approval Order will be designated by Defendants as "Highly Confidential – Attorneys' Eyes Only" and may only be used and disclosed by the Settlement Administrator to provide Notice of the Settlement and administer the Settlement consistent with the Preliminary Approval Order and Protective Order.

C.  **Direct Notice**

1.  Consistent with the timeline specified in the Preliminary Approval Order, the Settlement Administrator shall begin to send Direct Notice, substantially in the form attached hereto as Exhibit 5, by email and, if no email addresses is available, by U.S. Mail, proper postage prepaid, to the current and former owners of RNPS, as identified by data to be forwarded to the Settlement Administrator by Defendants, third party retailers, and through the Settlement Administrator's efforts.  The Direct Notice will be in English and Spanish and shall inform those

persons of how to obtain the Long Form Notice via the Settlement Website, via regular mail, or via a toll-free telephone number, pursuant to Sections E through G, below.

2.      Prior to mailing the Direct Notice, the Settlement Administrator shall process the information it receives from Defendants and third party retailers through the U.S. Postal Service's National Change of Address database.  The Direct Notice being provided shall be designed to meet all requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure.

**D.      Publication Notice**

The Settlement Administrator shall implement a Publication Notice plan that will provide Settlement-related information to potential Settlement Class Members in the U.S. and its territories. Publication Notice will include social media advertising through Facebook, Instagram, and YouTube in English and Spanish; online banner advertising in English and Spanish; and social media influencer posting through Facebook and Instagram, to be implemented in substantially the manner set forth in the Notice Plan attached hereto as Exhibit 3.

**E.      Settlement Website**

Consistent with the timeline specified in the Preliminary Approval Order, the Settlement Administrator shall establish a settlement website that will inform Settlement Class Members of the terms of this Settlement Agreement, their rights, dates and deadlines and related information. The Settlement Website shall include, in .pdf format, materials agreed upon by the Parties and/or required by the Court, including, but not limited to, the Settlement Agreement, the Long Form Notice, a "Frequently Asked Questions" section, and Court documents that may be of interest to most Settlement Class Members.

F.      **Long Form Notice**

1.      <u>Contents of Long Form Notice</u>: The Long Form Notice shall be in a form substantially similar to the document attached to this Settlement Agreement as Exhibit 4, and shall advise Settlement Class Members of the following:

(a)     <u>General Terms</u>: The Long Form Notice shall contain a short, plain description of the nature of the Action, the history of the Action, the preliminary certification of the Class for settlement purposes, and the Settlement Agreement, including information on the identity of Settlement Class Members, how the Settlement Agreement would provide relief to the Class and Settlement Class Members, the Release under the Settlement Agreement, and other relevant terms and conditions. The Long Form Notice shall also advise Settlement Class Members that any Settlement Payment is contingent upon the Court's final approval of the proposed Settlement.

(b)     <u>Opt-Out Rights</u>: The Long Form Notice shall inform Settlement Class Members that they have the right to opt out of the settlement. The Long Form Notice shall provide the deadlines and procedures for exercising this right.

(c)     <u>Objections to Settlement</u>: The Long Form Notice shall inform Settlement Class Members of their right to object to the Settlement Agreement, the requested award of Attorneys' Fees and Expenses, and the requested Class Representative Service Awards, and to appear at the Final Approval Hearing. The Long Form Notice shall provide the deadlines and procedures for exercising these rights.

(d)     <u>Fees and Expenses</u>: The Long Form Notice shall inform Settlement Class Members about the amounts being sought by Class Counsel as Attorneys' Fees and Expenses and individual Service Awards to Class Representatives.

2.      <u>Dissemination of Long Form Notice</u>: The Long Form Notice shall be available on the Settlement Website.  The Settlement Administrator shall send, via email and, if requested, by first-class mail, the Long Form Notice to those persons who request it in writing or through the toll-free telephone number.

**G.      Toll-Free Telephone Number**

Consistent with the timeline specified in the Preliminary Approval Order, the Settlement Administrator shall establish a toll-free telephone number that will provide Settlement-related information to Settlement Class Members in English and Spanish and permit Settlement Class Members to leave voicemail messages and receive a callback from a live operator with knowledge of the Settlement Agreement.

**H.      Class Action Fairness Act Notice**

Within ten (10) days of submitting this Settlement Agreement to the Court, the Settlement Administrator shall send to each appropriate State and Federal official, the materials specified in 28 U.S.C. § 1715, and shall otherwise comply with its terms.  The identities of such officials and the content of the materials shall be mutually agreeable to the Parties and in all respects comport with statutory obligations. Separate from the Settlement Payment, Defendants shall pay, in an amount previously approved by Defendants, the Settlement Administrator the costs of providing CAFA Notice.

**V.      REQUESTS FOR EXCLUSION**

A.      Any Settlement Class Member who wishes to be excluded (opt out) from the Class must mail a written request for exclusion to the Settlement Administrator at the address provided in the Long Form Notice, postmarked on or before the date specified in the Preliminary Approval Order, stating that he or she wants to be excluded and otherwise complying with the terms stated in the Long Form Notice and Preliminary Approval Order.  The written request must include:

1.      The case name and number of the Action;

2.      The excluding Settlement Class Member's full name, current residential address, mailing address (if different), telephone number, and e-mail address;

3.      An explanation of the basis upon which the excluding Settlement Class Member claims to be a Settlement Class Member, including the model of the RNPS, the place of purchase, the Purchase Price, and whether the RNPS is currently owned by the Settlement Class Member;

4.      A request that the Settlement Class Member wants to be excluded from the Class; and

5.      The excluding Settlement Class Member's dated, handwritten signature (an electronic signature or attorney's signature is not sufficient).

**B.**      The Settlement Administrator shall forward copies of any written requests for exclusion to Class Counsel and Defendants' Counsel.  A list reflecting all timely, valid requests for exclusion shall be filed with the Court by the Settlement Administrator no later than five (5) days before the Final Approval Hearing.  If a potential Settlement Class Member files a request for exclusion, he or she may not file an objection under Section VI, below.

**C.**      Any Class Member who does not file a timely, valid written request for exclusion as provided in this Section V shall be bound by all subsequent proceedings, orders, and judgments, including, but not limited to, the Release, Final Judgment, and Final Approval Order in the Action, even if he, she, or it has litigation pending or subsequently initiates litigation against Defendants relating to the claims and transactions released in the Action.

**D.**      Settlement Class Members who opt out can withdraw their Request for Exclusion before the Final Approval Hearing by submitting a written request stating their desire to revoke their request for exclusion along with their handwritten signature.

    **E.**    Defendants' Counsel shall provide to the Settlement Administrator and Class Counsel, within ten (10) business days of the entry of the Preliminary Approval Order, a list of all counsel for anyone who has then-pending litigation against Mattel and Fisher-Price relating to claims involving the RNPS and/or otherwise covered by the Release

**VI.**    **OBJECTIONS TO SETTLEMENT**

    **A.**    Any Settlement Class Member who has not excluded themselves pursuant to Section V and wishes to object to the Settlement Agreement, the requested award of Attorneys' Fees and Expenses, and/or the requested Class Representative Service Awards must submit a timely objection.  To be considered timely, an objection must be (1) filed electronically with the Court on or before the date specified in the Preliminary Approval Order, or (2) mailed to the Clerk of the Court with a postmark dated on or before the date specified in the Preliminary Approval Order, with copies provided to Class Counsel and Defendants' counsel. For a timely objection to be considered by the Court, the objection must set forth:

    1.    The case name and number of the Action;

    2.    The objector's full name, current residential address, mailing address (if different), telephone number, and e-mail address;

    3.    An explanation of the basis upon which the objector claims to be a Class Member, including the model of the RNPS, the place of purchase, the Purchase Price, and whether the RNPS is currently owned by the Class Member;

    4.    Whether the objection applies only to the objector, to a specific subset of the Class or to the entire Class, and all grounds for the objection, accompanied by any legal support for the objection, and any documents or other evidence the objector believes supports the objection;

    5.    The number of times the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection to this Settlement, the caption

and case number of each case in which the objector has made such objection and the caption and case number of any related appeal, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

6.     The full name, telephone number, mailing address, and e-mail address of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement Agreement and/or the request for Attorneys' Fees and Expenses;

7.     The identity of all counsel representing the objector who will appear at the Fairness Hearing;

8.     The number of times the objector's counsel has objected to a class action settlement within the five years preceding the date that they have filed the objection, and the caption and case number of each case in which objector's counsel has made such objection and the caption and case number of any related appeal;

9.     If the Class Member or his or her counsel have not made any such prior objection, the Class Member shall affirmatively so state in the written materials provided with the objection;

10.     A list of all persons who will be called to testify at the Fairness Hearing in support of the objection;

11.     A statement confirming whether the objector intends to personally appear and/or testify at the Fairness Hearing; and

12.     The objector's original signature and date of signature. Each objection must be personally signed by the objector (an electronic signature or attorney's signature is not sufficient).

**B.**     Any Settlement Class Member who fails to comply with the provisions of Section VI.A, above, shall be deemed to have waived and forfeited any and all rights he or she may have

to appear separately and object, whether by a subsequent objection, intervention, appeal, or any other process, and shall be bound by all the terms of this Settlement Agreement and by all proceedings, orders and judgments, including, but not limited to, the Release, the Final Approval Order, and the Final Judgment in the Action.  The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of this Section VI.A.  Without limiting the foregoing, any challenge to the Settlement Agreement, Final Approval Order, or Final Judgment shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through collateral proceedings.  Settlement Class Members may not both object and request exclusion (opt out).

C.     Any Settlement Class Member who objects to the Settlement Agreement shall be entitled to all the benefits of the Settlement Agreement if the Settlement Agreement and the terms contained herein are approved, as long as the objecting Settlement Class Member complies with all requirements of this Settlement Agreement applicable to Settlement Class Members.

VII.   **RELEASE AND WAIVER**

A.     In consideration of the benefits provided to the Settlement Class Members by Defendants as described in this Settlement Agreement, upon the Effective Date, each Settlement Class Member, on his or her own behalf and on behalf of his or her respective predecessors, successors, assigns, assignors, representatives, attorneys, agents, trustees, insurers, heirs, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical person or entity to the extent he, she, or it is or will be entitled to assert any claim on behalf of any Class Member (the "Releasors"), hereby waive and release, forever discharge and hold harmless the Released Parties, and each of them, of and from any and all past, present and future claims, counterclaims, actions, rights or causes of action, liabilities, suits, demands, damages, losses, payments, judgments, debts, dues, sums of money, costs and expenses (including, without limitation, attorneys' fees and costs),

45

accounts, bills, covenants, contracts, controversies, agreements, obligations, or promises, in law or in equity, contingent or non-contingent, known or unknown, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, liquidated or unliquidated, whether patent or latent, concealed or overt, direct, representative, class or individual in nature, in any forum ("Claims") that the Releasors, and each of them, had, has, or may have in the future arising out of, in any way relating to, or in connection with, the RNPS that were or could have been asserted in the Action, including claims alleging false advertising, breach of implied warranties, Released Parties' statements or omissions or conduct regarding the Recall, and Released Parties' marketing, representations or omissions regarding the RNPS, including relating to the safety, detection or resolution of alleged concerns regarding the RNPS, including unknown claims ("Released Claims"); provided, however, that the Released Claims shall not include claims for wrongful death, personal injury and property damage.

**B.**     The Final Approval Order will include this same Release language.

**C.**     Class Representatives, on behalf of the other Settlement Class Members and through Class Counsel, expressly agree that this Release and the Final Approval Order and Final Judgment is, will be, and may be raised as a complete defense to, and will preclude any action or proceeding encompassed by, this Release.

**D.**     Class Representatives and Settlement Class Members shall not now or hereafter institute, maintain, prosecute, assert, and/or cooperate in the institution, commencement, filing, or prosecution of any suit, action, and/or proceeding, against the Released Parties, either directly or indirectly, on their own behalf, on behalf of a class or on behalf of any other person or entity with respect to the claims, causes of action and/or any other matters released through this settlement and the Settlement Agreement.

E.      In connection with the Settlement Agreement, Class Representatives, on behalf of themselves and the other Settlement Class Members, acknowledge that they and other Settlement Class Members may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true concerning the subject matter of the Action and/or the Release herein. Nevertheless, it is the intention of Class Counsel and Class Representatives in executing this Settlement Agreement to fully, finally, and forever settle, release, discharge, and hold harmless all such matters, and all claims relating thereto which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) with respect to the Action and Released Claims, provided, however, that Class Representatives and the other Settlement Class Members are not releasing claims for personal injury, wrongful death or physical property damage from the RNPS.

F.      In consideration of the benefits provided to the Settlement Class Members by Defendants as described in this Settlement Agreement, upon the Effective Date, Releasors shall further be deemed to have waived and released any and all provisions, rights, and benefits conferred by Section 1542 of the Civil Code of the State of California or similar laws of any other state or jurisdiction to the extent applicable.

SECTION 1542 OF THE CALIFORNIA CIVIL CODE READS:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

G.      Class Representatives represent and warrant that they are the sole and exclusive owners of all claims that they personally are releasing under this Settlement Agreement.  Class

Representatives further acknowledge that they have not assigned, pledged, or in any manner whatsoever sold, transferred, assigned, or encumbered any right, title, interest, or claim arising out of or in any way whatsoever pertaining to the Action, including, without limitation, any claim for benefits, proceeds, or value under the Action, and that Class Representatives are not aware of anyone other than themselves claiming any interest, in whole or in part, in the individual claims that they are releasing under the Settlement Agreement or in any benefits, proceeds, or values in the individual claims that they are releasing under the Settlement Agreement.

H.      In consideration for the Settlement Agreement, upon the Effective Date, Mattel and Fisher-Price and their past or present officers, directors, employees, agents, attorneys, predecessors, successors, affiliates, subsidiaries, divisions, successors and assigns shall be deemed to have, and by operation of the Final Approval Order and Final Judgment, shall have released Plaintiffs' Counsel, Class Counsel, and each Class Representative from any and all causes of action that were or could have been asserted pertaining solely to the conduct in filing and prosecuting the litigation or in settling the Action.

I.      Class Representatives, Plaintiffs' Counsel, Class Counsel, and any other attorneys who receive Attorneys' Fees and Expenses from this Settlement Agreement acknowledge that they have conducted sufficient independent investigation and discovery to enter into this Settlement Agreement and, by executing this Settlement Agreement, state that they have not relied upon any statements or representations made by the Released Parties or any person or entity representing the Released Parties, other than as set forth in this Settlement Agreement.

J.      The Parties specifically understand that there may be further pleadings, discovery requests and responses, testimony, or other matters or materials owed by the Parties pursuant to existing pleading requirements, discovery requests, or pretrial rules, procedures, or orders, and

that, by entering into this Settlement Agreement and the occurrence of the Effective Date, the Parties expressly waive any right to receive, hear, or inspect such pleadings, testimony, discovery, or other matters or materials.

**K.**     Nothing in this Release shall preclude any action to enforce the terms of the Settlement Agreement in the Court.

**L.**     The Parties represent and warrant that no promise or inducement has been offered or made for the Releases contained in this Section VII except as set forth in this Settlement Agreement and that the Releases are executed without reliance on any statements or any representations not contained in this Settlement Agreement.

**M.**     Class Representatives and Class Counsel hereby agree and acknowledge that the provisions of this Release together constitute an essential and material term of the Settlement Agreement and shall be included in any Final Judgment and Final Approval Order entered by the Court.

## VIII.   <u>QUALIFIED SETTLEMENT FUND</u>

**A.**     The Parties agree that the Settlement Fund is intended to be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468B-1, and that the Settlement Administrator, within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for the Settlement Fund and paying from the Settlement Fund all costs associated with, and any Taxes owed with respect to, the Settlement Fund. The Parties agree that the Settlement Fund shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Settlement Fund as a qualified settlement fund from the earliest date possible.

**B.**     All costs associated with and all Taxes relating to the Settlement Fund shall be paid out of the Settlement Fund, shall be considered to be a Settlement Administration Expense, and

shall be timely paid by the Settlement Administrator without prior order of the Court. Further, the Settlement Fund shall indemnify and hold harmless the Parties and their counsel for Taxes (including, without limitation, taxes payable by reason of any such indemnification payments).

C.     Any funds in the Settlement Fund Account in excess of $250,000.00 shall be invested in short term United States Agency or Treasury Securities, or a mutual fund invested solely in such instruments, and shall collect and reinvest all earnings accrued thereon. Any funds held in the Settlement Fund Account in an amount of less than $250,000.00 may be held in an interest-bearing account insured by the Federal Deposit Insurance Corporation ("FDIC") or may be invested as funds in excess of $250,000.00 are invested. Funds may be placed in a non-interest-bearing account as may be reasonably necessary during the check clearing process.

D.     All funds held in the Settlement Fund Account relating to the Settlement shall be deemed to be in the custody of the Court until such time as the funds shall be distributed to Settlement Class Members or otherwise disbursed pursuant to this Agreement or further order of the Court.

E.     The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Class Representative or any Settlement Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund.

F.     Each Class Representative and Settlement Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her, or it of the receipt of funds from the Settlement Fund pursuant to this Agreement.

IX.   **ATTORNEYS' FEES AND EXPENSES AND CLASS REPRESENTATIVE SERVICE AWARDS**

A.      Prior to the Final Approval Hearing, Class Counsel will file a motion for an award of Attorneys' Fees and Expenses, and Class Representative Service Awards. Plaintiffs will seek Attorneys' Fees in an amount no greater than $5,320,000.00 to be paid from the Settlement Fund, which represents twenty-eight percent (28%) of the Settlement Fund. Class Counsel will also seek reimbursement of litigation expenses incurred by Plaintiffs' Counsel of up to $825,000.00, and Class Representative Service Awards of $3,500.00 for each of the 20 Class Representatives who have monitored this litigation for over five years, responded to discovery requests, and sat for depositions, to be paid from the Settlement Fund. Notice to the Settlement Class Members will advise them of these planned requests and advise them of the procedures for them to comment on or object to the fee petition before Final Approval.

B.      No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any Attorneys' Fees and Expenses awarded by the Court to Class Counsel, or concerning the amounts of any Class Representative service awards that are awarded by the Court to Class Representatives, shall affect whether the Final Order and Final Judgment are final and shall not constitute grounds for cancellation or termination of the Settlement.

X.   **PRELIMINARY APPROVAL ORDER, FINAL APPROVAL ORDER, AND FINAL JUDGMENT, AND RELATED ORDERS**

A.      No later than July 24, 2024, Class Counsel shall seek from the Court a Preliminary Approval Order in a form substantially similar to Exhibit 2, which shall include a copy of this Settlement Agreement and its Exhibits.

B.      The Parties stipulate and agree to certification of the Settlement Class as against Defendants pursuant to Rules 23(a), 23(b)(3), and 23(e) of the Federal Rules of Civil Procedure.

The Parties agree that this stipulation is for settlement purposes only. The Parties do not waive or concede any position or arguments they have for or against certification of any class for any other purpose in any action or proceeding. The Parties agree that the Court's certification of the Settlement Class for purposes of this Settlement does not constitute an admission by Defendants that the claims of the Settlement Class would be appropriate for class treatment if the claims were contested in this or any other forum.

C.      The Preliminary Approval Order shall, among other things:

1.      Certify a nationwide settlement-only Class, approve Class Representatives as Class Representatives, and appoint Class Counsel as counsel for the Class, pursuant to Fed. R. Civ. P. 23;

2.      Preliminarily approve the Settlement Agreement;

3.      Require the dissemination of the Notice and the taking of all necessary and appropriate steps to accomplish this task;

4.      Require Defendants to provide to the Settlement Administrator, within five (5) business days of the entry of the Preliminary Approval Order, the Customer Contact Information referenced in Section IV.B of this Settlement Agreement;

5.      Determine that Class Notice and the Notice Plan comply with all legal requirements, including, but not limited to, Fed. R. Civ. P. 23 and the Due Process Clause of the United States Constitution;

6.      Schedule a date and time for a Final Approval Hearing to determine whether the Settlement Agreement should be finally approved by the Court, and whether the requested Attorneys' Fees and Expenses and Class Representative Service Awards should be granted;

7.     Require Settlement Class Members who wish to exclude themselves to submit an appropriate and timely written Request for Exclusion as directed in this Settlement Agreement and Long Form Notice and provide that a failure to do so shall bind those Settlement Class Members who remain in the Class;

8.     Require Settlement Class Members who wish to object to this Settlement Agreement to submit an appropriate and timely written statement as directed in this Settlement Agreement and Long Form Notice, which shall both be on the Settlement Website;

9.     Require attorneys representing Settlement Class Members objecting to the Settlement Agreement, at such Settlement Class Members' expense, to file a timely notice of appearance with the Court as directed in the Long Form Notice;

10.    Issue a preliminary injunction and stay all other actions, pending final approval by the Court;

11.    Issue a preliminary injunction enjoining potential Settlement Class Members, pending the Court's determination of whether the Settlement Agreement should be given final approval, from challenging in any action or proceeding any matter covered by this Settlement Agreement, except for proceedings in this Court to determine whether the Settlement Agreement will be given final approval;

12.    Appoint the Settlement Administrator;

13.    Authorize Defendants to take all reasonable and appropriate steps to establish the means necessary to implement the Settlement Agreement; and

14.    Authorize Defendants to destroy all RNPS and/or parts to RNPS currently in their possession; provided, however, that Defendants shall preserve five (5) RNPS for each SKU

currently in Defendants' possession, where available, for a period of two (2) years from the Effective Date, after which Defendants may destroy the remaining RNPS.

15.     Issue other related orders to effectuate the preliminary approval of the Settlement Agreement.

D.     On or before the date set by the Court in the Preliminary Approval Order, or at such other time as ordered by the Court, Plaintiffs shall seek to obtain from the Court a Final Approval Order and Final Judgment in the forms substantially similar to Exhibits 9 and 8, respectively. The Final Approval Order and Final Judgment shall, among other things:

1.     Find that the Court has personal jurisdiction over all Settlement Class Members, that the Court has subject matter jurisdiction over the claims asserted in the Action, and that venue is proper;

2.     Confirm the certification of the Settlement Class for settlement purposes only, pursuant to Fed. R. Civ. P. 23;

3.     Finally approve the Settlement Agreement in its entirety, pursuant to Fed. R. Civ. P. 23;

4.     Confirm the appointment of Class Counsel;

5.     Find that the Class Notice and the Notice Plan comply with all laws, including, but not limited to, Fed. R. Civ. P. 23 and the Due Process Clause of the United States Constitution;

6.     Dismiss this Action and Constituent Actions with prejudice and without costs (except as provided for herein as to costs);

7.     Incorporate the Release set forth in the Agreement and make the Release effective as of the date of the Final Approval Order and Final Judgment;

8.      Permanently bars, enjoins, and restrains the Releasors, and each of them, from commencing, filing, initiating, prosecuting, asserting, and/or maintaining any and all Released Claims against the Released Parties;

9.      Authorize the Parties to implement the terms of the Settlement Agreement;

10.     Confirm the appointment of the Settlement Administrator;

11.     Retain continuing and exclusive jurisdiction over the Parties, the Settlement Class and this Settlement Agreement to administer, consummate, implement, enforce, and interpret the Settlement Agreement, the Final Approval Order and Final Judgment, and for any other necessary purpose; and

12.     Issue any related Orders to effectuate the final approval of the Settlement Agreement and its implementation.

## XI.     <u>AGREEMENT TO COOPERATE TO EFFECTUATE THE SETTLEMENT</u>

A.      The Parties and respective counsel will cooperate with each other, act in good faith, and use their best efforts to effectuate the implementation of this Settlement. In the event the Parties are unable to reach agreement on any matter that may become necessary to effectuate the terms of the Settlement, the Parties may seek the assistance of the Court to resolve such disagreement.

B.      The Parties shall use reasonable best efforts to ensure the timely and expeditious administration and implementation of the Agreement and to minimize the costs and expenses incurred in connection therewith.

## XII.    <u>MODIFICATION OR TERMINATION OF THIS SETTLEMENT AGREEMENT</u>

A.      The terms and provisions of this Settlement Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that after entry of the Final Approval Order Judgment, the Parties may, by written agreement, effect such amendments, modifications, or expansions of this Settlement Agreement and its

implementing documents (including all exhibits hereto) without further notice to the Class or approval by the Court, if such changes are consistent with the Court's Final Approval Order and Judgment and do not limit the rights of Settlement Class Members under this Settlement Agreement.

**B.**      This Settlement Agreement shall terminate at the discretion of either Defendants or the Class Representatives, through Class Counsel, if: (1) Class Counsel determines through confirmatory discovery that the Settlement is not fair, reasonable, or adequate; (2) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of the Settlement Agreement that the terminating party reasonably determine(s) is material, including, without limitation, the terms of relief, the findings, or conclusions of the Court, the provisions relating to notice, the definition of the Class, and/or the terms of the Release; or (3) the Court, or any appellate court(s), does not enter or completely affirm, or alters, narrows or expands, any portion of the Final Approval Order and Final Judgment, or any of the Court's findings of fact or conclusions of law, that the terminating party reasonably determine(s) is material.  The terminating party must exercise the option to withdraw from and terminate this Settlement Agreement, as provided in this Section XII.B, by a signed writing served on the other Parties no later than twenty (20) days after receiving notice of the event prompting the termination.  The Parties will then be returned to their positions status quo ante.

**C.**      If an option to withdraw from and terminate this Settlement Agreement arises under Section XII.B above, neither Defendants nor Class Representatives, through Class Counsel, are required for any reason or under any circumstance to exercise that option and any exercise of that option shall be in good faith.

**D.**      If this Settlement Agreement is terminated pursuant to Section XII.B, above, then:

1.      This Settlement Agreement shall be null and void and shall have no force or effect, and no Party to this Settlement Agreement shall be bound by any of its terms, except for the terms of this Section XII.D;

2.      The Parties will petition the Court to have any stay orders entered pursuant to this Settlement Agreement lifted;

3.      All of its provisions, and all negotiations, statements, and proceedings relating to it shall be without prejudice to the rights of Defendants, Class Representatives, or any Settlement Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Settlement Agreement, except that the Parties shall cooperate in requesting that the Court set a new scheduling order such that no Party's substantive or procedural rights are prejudiced by the settlement negotiations and proceedings;

4.      Class Representatives, on behalf of themselves and their heirs, assigns, executors, administrators, predecessors, and successors, and on behalf of the Class, expressly and affirmatively reserve and do not waive all motions as to, and arguments in support of, all claims, causes of action, or remedies that have been or might later be asserted in the Action including, without limitation, any argument concerning class certification, and treble or other damages;

5.      Defendants and the other Released Parties expressly and affirmatively reserve and do not waive all motions and positions as to, and arguments in support of, all defenses to the causes of action or remedies that have been sought or might be later asserted in the actions, including without limitation, any argument or position opposing class certification, liability, or damages;

6.      Neither the fact of the Settlement Agreement having been made, the negotiations leading to it, nor any discovery or action taken by a Party or Settlement Class Member pursuant to this Settlement Agreement, shall be admissible or entered into evidence for any purpose

whatsoever, except to the extent the Settlement Agreement is filed with the Court, it can be referenced in the Action and any related appeal;

7.       Any settlement-related order(s) or judgment(s) entered in this Action after the date of execution of this Settlement Agreement shall be deemed vacated and shall be without any force or effect;

8.       Defendants shall bear Settlement Administration Expenses up to $250,000.00 incurred and invoiced by the Settlement Administrator, and approved by Class Counsel, in connection with the implementation of this Settlement up until its termination, including, without limitation, notice, publication, claims administration and consumer communications.  Neither Class Representatives nor Class Counsel shall be responsible for any of these costs up to $250,000.00.  Any Settlement Administration Expense incurred by the Settlement Administrator over $250,000.00 shall not be the responsibility of Defendants, Class Representatives, or Plaintiffs' Counsel.

9.       All funds remaining in the Settlement Fund or that have been remitted to Class Counsel or Plaintiffs' Counsel, including any Attorneys' Fees and Expenses awarded pursuant to Section IX, shall be returned to Defendants; and

10.       Notwithstanding the terms of this paragraph, if the Settlement is not consummated, Class Counsel may include any time spent in settlement efforts as part of any fee petition filed at the conclusion of the case.

## XIII.   REPRESENTATIONS AND WARRANTIES

A.       Class Counsel represents that: (1) they are authorized by Class Representatives to enter into this Settlement Agreement with respect to the claims in this Action; and (2) they are seeking to protect the interests of the Class.

**B.**     Class Counsel further represent that Class Representatives: (1) have agreed to serve as representatives of the Class proposed to be certified herein; (2) are willing, able, and ready to perform all of the duties and obligations of representatives of the Class, including, but not limited to, being involved in discovery and fact-finding; (3) have read the pleadings in the Action or have had the contents of such pleadings described to them; (4) are familiar with the results of the fact-finding undertaken by Class Counsel; (5) have been kept apprised of settlement negotiations among the Parties, and have either read this Settlement Agreement, including the exhibits annexed hereto, or have received a detailed description of it from Class Counsel and/or Plaintiffs' Counsel and have agreed to its terms; (6) have consulted with Class Counsel about the Action and this Settlement Agreement and the obligations imposed on representatives of the Class; (7) have authorized Class Counsel to execute this Settlement Agreement on their behalf; and (8) shall remain and serve as representatives of the Class until the terms of this Settlement Agreement are effectuated, this Settlement Agreement is terminated in accordance with its terms, or the Court at any time determines that said Class Representatives cannot represent the Class.

**C.**     The Parties acknowledge and agree that no opinion concerning the tax consequences of the Settlement Agreement to Settlement Class Members is given or will be given by the Parties, nor are any representations or warranties in this regard made by virtue of this Settlement Agreement.  Each Settlement Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

**D.**     Mattel represents and warrants that the individual(s) executing this Settlement Agreement is authorized to enter into this Settlement Agreement on behalf of Mattel.

**E.**     Fisher-Price represents and warrants that the individual(s) executing this Settlement Agreement is authorized to enter into this Settlement Agreement on behalf of Fisher-Price.

## XIV.   GENERAL MATTERS AND RESERVATIONS

**A.**     Defendants have denied and continue to deny each and all of the claims and contentions alleged in the Action and have denied and continue to deny that they have committed any violation of law or engaged in any wrongful act that was alleged, or that could have been alleged, in the Action.  Nonetheless, Defendants have concluded that it is desirable that the Action be fully and finally settled in the matter and upon the terms and conditions set forth in this Settlement Agreement.

**B.**     The obligation of the Parties to conclude the Settlement Agreement is and shall be contingent upon each of the following:

1.     Entry by the Court of the Final Approval Order and Judgment approving the Settlement Agreement, from which the time to appeal has expired or which has remained unmodified after any appeal(s); and

2.     Any other conditions stated in this Settlement Agreement.

**C.**     The Parties and their counsel agree to keep the existence and contents of this Settlement Agreement confidential until the date on which the Motion for Preliminary Approval is filed; provided, however, that this Section shall not prevent the Parties and their counsel from disclosing such information to persons or entities (such as experts, courts, co-counsel, and/or administrators) to whom the Parties agree disclosure must be made to effectuate the terms and conditions of this Settlement Agreement.

**D.**     Class Representatives and Class Counsel agree that the confidential information made available to them solely through the settlement process was provided pursuant to the protections of Federal Rule of Evidence 408 and any equivalent rule in other states or territories,

and made available on the condition that neither Class Representatives nor their counsel may disclose it to third parties (other than experts or consultants retained by Class Representatives in connection with the Action) or used for any purpose other than settlement of this Action. Nothing contained herein shall prohibit Class Representatives from seeking such information through formal discovery if not previously requested through formal discovery or from referring to the existence of such information in connection with the settlement of the Action.

E.     Information provided by Defendant and/or Defendants' Counsel to Class Representatives, Class Counsel, Plaintiffs' Counsel, any individual Settlement Class Member, counsel for any individual Settlement Class Member, and/or administrators, pursuant to the negotiation and implementation of this Settlement Agreement, includes trade secrets and highly confidential and proprietary business information and shall be deemed "Highly Confidential" pursuant to the Protective Order that has been or will be entered in the Action, and shall be subject to all of the provisions thereof.  Any materials inadvertently produced shall, upon Defendants' request, be promptly returned to Defendants' Counsel, and there shall be no implied or express waiver of any privileges, rights, and defenses.

F.     Defendants' execution of this Settlement Agreement shall not be construed to release – and Defendants expressly do not intend to release – any claim they may have or make against any insurer for any cost or expense incurred in connection with this Action and/or Settlement Agreement.

G.     This Settlement Agreement, complete with its exhibits, sets forth the sole and entire agreement among the Parties with respect to its subject matter, and it may not be altered, amended, or modified except by written instrument executed by Class Counsel and Defendants' Counsel on behalf of Mattel and Fisher-Price. The Parties expressly acknowledge that no other agreements,

arrangements, or understandings not expressed in this Settlement Agreement exist among or between them, and that in deciding to enter into this Settlement Agreement, they rely solely upon their judgment and knowledge.  This Settlement Agreement supersedes any prior agreements, understandings, or undertakings (written or oral) by and between the Parties regarding the subject matter of this Settlement Agreement.

      **H.**    This Settlement Agreement and any amendments thereto shall be governed by and interpreted according to the law of the State of New York notwithstanding its conflict-of-laws provisions.

      **I.**    Any disagreement and/or action to enforce this Settlement shall be commenced and maintained only in the United States District Court for the Western District of New York.

      **J.**    Whenever this Settlement Agreement requires or contemplates that one of the Parties shall or may give notice to the other, notice shall be provided by e-mail and/or next-day (excluding Saturdays, Sundays, and Federal Holidays) express delivery service as follows:

    1.    If to Defendants, then to:

        Matthew Kanny
        Goodwin Proctor LLP
        520 Broadway, Suite 500
        Santa Monica, CA 90401

        Mattel, Inc.
        Attention:  Head of Litigation
        333 Continental Boulevard
        El Segundo, California 90245

    2.    If to the Class, then to:

        Demet Basar
        Beasley Allen Law Firm
        218 Commerce Street
        Montgomery, AL 36104

**K.**     All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Settlement Agreement or by order of the Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a Federal Holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of the court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.  As used in this Section, "Federal Holiday" includes New Year's Day, Birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Juneteenth, Independence Day, Labor Day, Columbus Day, Veterans Day, Patriot's Day, Thanksgiving Day, Christmas Day, and any other day appointed as a holiday by the President, the Congress of the United States, or the Clerk of the United States District Court for the District of New Jersey.

**L.**     The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

**M.**     The Class Representatives, Settlement Class Members, Plaintiffs' Counsel, Defendants, and Defendants' Counsel shall not be deemed to be the drafter of this Settlement Agreement or of any particular provision, nor shall they argue that any particular provision should be construed against its drafter.  All Parties agree that this Settlement Agreement was drafted by counsel for the Parties during extensive arm's length negotiations.

**N.**     Class Representatives, through their counsel, expressly affirm that the allegations contained in the CAC and all prior complaints filed in the Action were made in good faith but

consider it desirable for the Action to be settled and dismissed because of the substantial benefits that the Settlement Agreement will provide to Settlement Class Members.

O.     The Parties agree that this Settlement Agreement and Class Action Settlement was reached voluntarily after consultation with competent legal counsel.

P.     The Parties, their successors and assigns, and their counsel undertake to implement the terms of this Settlement Agreement in good faith, and to act in good faith in resolving any disputes that may arise in the implementation of the terms of this Settlement Agreement.

Q.     The waiver by one Party of any breach of this Settlement Agreement by another Party shall not be deemed a waiver of any prior or subsequent breach of this Settlement Agreement.

R.     If one Party to this Settlement Agreement considers another Party to be in breach of its obligations under this Settlement Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Settlement Agreement.

S.     The Parties, their successors and assigns, and their counsel agree to cooperate fully with one another in seeking Court approval of this Settlement Agreement and to use their best efforts to effect the prompt consummation of the Settlement Agreement.

T.     This Settlement Agreement may be signed with a facsimile signature and in counterparts, each of which shall constitute a duplicate original.

U.     In the event any one or more of the provisions contained in this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision if Defendants' Counsel, on behalf of Mattel and Fisher-Price, and Class Counsel, on behalf of Class Representatives and Settlement Class Members, mutually agree in writing to proceed as if such

invalid, illegal, or unenforceable provision had never been included in this Settlement Agreement.

Any such agreement shall be reviewed and approved by the Court before it becomes effective.

      **V.**     This Settlement Agreement shall be binding upon and incur to the benefit of, the

successors and assigns of the Class and Defendants.

      Agreed to on the date indicated below.

APPROVED AND AGREED TO BY CLASS COUNSEL
AS AUTHORIZED BY CLASS REPRESENTATIVES

BY:_____     DATE: _____July 24_____, 2024
    Demet Basar

BY:_____     DATE: _____July 24_____, 2024
    James Eubank

BY:_____     DATE: _____July 24_____, 2024
    Paul Evans

APPROVED AND AGREED TO BY FISHER-PRICE, INC. AND MATTEL, INC.


BY _Joseph A. Vinhais_____     DATE: ___July 24_____, 2024
NAME: Joseph A. Vinhais
TITLE: SVP, Global Quality, Product Safety, and Regulatory Compliance
For and on behalf of Fisher-Price, Inc. and
Mattel, Inc.




APPROVED AND AGREED TO AS TO FORM
BY FISHER-PRICE'S AND MATTEL'S
COUNSEL


BY _Matthew P. Kanny_____     DATE: ___July 24_____, 2024
Matthew P. Kanny
Goodwin Procter LLP